UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.   05-11395-RCL

PATRICIA BERGEVINE,
    Plaintiff,

v.

PEASE & CURREN, INC, PEASE & CURREN
MATERIALS, INC., FRANCIS H. CURREN, JR.,
ROBERT H. PEASE, JR., FRANCIS H. CURREN,
III A/K/A KIP CURREN AND MEREDITH A.
CURREN.
    Defendants.

---

### PLAINTIFF'S MEMORANDUM OF REASONS IN SUPPORT OF MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT AND REQUEST FOR HEARING

---

NOW COMES the Plaintiff Patricia Bergevine (the "Plaintiff") and, in accordance with Rule 15(d) of the Federal Rules of Civil Procedure, hereby submits the following in support of her request for leave of Court to amend her Complaint and Demand for Jury Trial against the Defendants Pease & Curren, Inc., Pease & Curren Materials, Inc., Francis H. Curren, Jr., Robert H. Pease, Jr., Francis H. Curren, III A/K/A Kip Curren and Meredith A. Curren (the "Defendants").  As set forth in the First Amended Complaint attached hereto at *Exhibit A*, amendment of the complaint with regard to the claims for relief under Rule 15(d) is necessary if complete relief is to be granted.  Specifically, the Plaintiff wishes to add a new claim for relief against the Defendants for violations of Mass. Gen. Laws ch. 93A, *et. seq.*

    The Plaintiff, in her Complaint, asserts claims for breach of contract; fraud; violations of the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1962(a)-(d);

negligence; negligent misrepresentation; negligent infliction of emotional distress; and intentional infliction of emotional distress against the Defendants.

From August, 1996 through December, 2001, the Plaintiff worked with the Defendants as a dental account representative. The Plaintiff was an independent contractor during that time period and at all relevant times herein, the Defendants Pease & Curren and Pease & Curren Materials were in the business of refining precious metals for various industries. The Plaintiff's primary responsibility was to solicit business, including attending trade shows, making telephone sales calls and following up on client contacts. In exchange for her work, from August, 1996 until December, 2001, the Defendants paid the Plaintiff a stipend of Two Hundred Dollars ($200.00) per week for the first two (2) years and Three Hundred Dollars ($300.00) per week, thereafter. Additionally, for each job or "lot" that she brought to the Defendants, the Plaintiff received a commission of Fifty Dollars ($50.00) in the first two (2) years, and Seventy-Five Dollars ($75.00) thereafter. Finally, the Plaintiff would receive additional commissions for each job or "lot" based on the total weight of each of the metals refined. For a "melt job", the Plaintiff would receive One Dollar ($1.00) for each troy ounce of each metal received and for a "sweep", the Plaintiff would receive Five Dollars ($5.00) for each troy ounce of each metal recovered. The Defendants would prepare a report (hereinafter, "Report") from each "lot" refined or "assayed" and would then issue a check to the client based on the market value of the respective total weight of each of the metals comprising the lot. The Plaintiff prepared and submitted monthly invoices for her commission based upon the Reports provided to her by the Defendants. The Defendants paid the Plaintiff once a week for the stipend and once a month for commissions with a company check.

Throughout the course of her employment relationship with the Defendants, the Plaintiff regularly received phone calls and letters from a number of her clients asking for the Defendants to re-assay the lots, because the weights and corresponding reimbursements seemed low by their previous numbers. The majority of the times that a lot was re-assayed, the Defendants would claim that the original numbers were correct. In June, 2002, a colleague of the Plaintiff discovered the contents of another database at the Defendants' offices in Warwick, RI containing files with reports detailing different amounts for many of the lots. The colleague informed the Plaintiff of the additional database and further indicated to the Plaintiff that the reports in the database contained the actual amount of each metal refined on each lot. After comparing the files in the database to those reports that the Plaintiff and the clients received from the Defendants, the Plaintiff and her colleague discovered that the Defendants were systematically lowering the reported weights and percentage of metals recovered to defraud their clients, employees and the Plaintiff. By lowering the amount of weight or percentage of each metal recovered, the Defendants paid less money to the clients and fewer commissions to the Plaintiff, and concealed the actual value of the lots assayed and recovered.

The Plaintiff commenced this action in July, 2005. The within acts of the Defendants constitute unfair and deceptive business practices or acts, and from August, 1996 through December, 2001, the Plaintiff Bergevine was operating as an independent contractor. As such, the Plaintiff now seeks to amend the Complaint to add a count for violations of Mass. Gen. Laws ch. 93A, *et. seq.*

**WHEREFORE** the Plaintiff respectfully requests that this Honorable Court allow her Motion to Amend the Complaint. A copy of the proposed First Amended Complaint and

Demand for Jury Trial is attached hereto as *Exhibit A*.

                      Respectfully submitted,
                      PATRICIA BERGEVINE,
                      By her attorneys,


                      /s/ Gregory J. Aceto
                      Gregory J. Aceto, Esq.
                       BBO No. 558556
                      Erin J. Brennan, Esq.
                       BBO No. 660097
                      Johnson & Aceto, LLP
                      67 Batterymarch Street, Suite 400
                      Boston, MA 02110
                      (617) 728-0888

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.   05-11395-RCL

PATRICIA BERGEVINE,
      Plaintiff,

v.

PEASE & CURREN, INC, PEASE & CURREN
MATERIALS, INC., FRANCIS H. CURREN, JR.,
ROBERT H. PEASE, JR., FRANCIS H. CURREN,
III A/K/A KIP CURREN AND MEREDITH A.
CURREN.
      Defendants.

---

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTORY STATEMENT**

This is a civil action for (i) breach of contract; (ii) fraud; (iii) violations of the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1962(a)-(d); (iv) negligence; (v) negligent misrepresentation; (vi) negligent infliction of emotional distress; (vii) intentional infliction of emotional distress; and (viii) violations of Massachusetts General Laws ch. 93A, *et. seq.* arising from the Defendants Pease & Curren, Inc., Pease & Curren Materials, Inc., Francis H. Curren, Jr., Robert H. Pease, Jr., Francis H. Curren, III a/k/a Kip Curren and Meredith A. Curren's (hereinafter the "Defendants") fraudulent business practices committed during the Plaintiff Patricia Bergevine's (hereinafter the "Plaintiff") employment with the Defendants.

**PARTIES**

1.  The Plaintiff Patricia Bergevine ("Bergevine") is an individual residing at 428 South Street, Plainville, Norfolk County, Commonwealth of Massachusetts, 02762.

2.  The Defendant Pease & Curren, Inc. ("Pease & Curren") is a corporation incorporated under the laws of the State of Rhode Island having its principal place of business located at 75 Pennsylvania Avenue, Warwick, Rhode Island, 02888.

3.  The Defendant Pease & Curren Materials, Inc. ("Pease & Curren Materials") is a corporation incorporated under the laws of the State of Rhode Island having its principal place of business located at 75 Pennsylvania Avenue, Warwick, Rhode Island, 02888.

4.  The Defendant Francis H. Curren, Jr. ("Curren, Jr.") is an individual residing at 7 Newport Street, Jamestown, State of Rhode Island.

5.  The Defendant Robert H. Pease, Jr. ("Pease") is an individual residing at 263 Wickford Point Road, North Kingstown, State of Rhode Island.

6.  The Defendant Francis H. Curren, III ("Curren, III") a/k/a Kip Curren is an individual residing at 23 William Drive, Middletown, State of Rhode Island.

7.  The Defendant Meredith A. Curren ("M. Curren") is an individual residing at 1274 Narragansett Boulevard, Cranston, State of Rhode Island.  Meredith Curren is currently the President of Pease & Curren and Pease & Curren Materials.

**JURISDICTION**

8.  The United States District Court for the District of Massachusetts has proper jurisdiction over this matter by reason of complete diversity of citizenship of the parties, and the jurisdictional amount in controversy.  28 U.S.C.A. § 1332 and

§ 1335. The matter in controversy exceeds, exclusive of interest and costs, Seventy-Five Thousand Dollars and 01/100 ($75,000.01).

9.  This action also arises under the Racketeer Influence and Corrupt Organization Act, 18 U.S.C.A. § 1964, as hereinafter more fully appears.

## FACTUAL BACKGROUND

10. Working as an independent contractor, and later an employee, the Plaintiff Patricia Bergevine ("Bergevine") was a dental account representative for the Defendants from August, 1996 to June, 2002.

11. At all relevant times herein, the Defendants Pease & Curren and Pease & Curren Materials were in the business of refining precious metals for various industries. Pease & Curren maintains business relationships with clients throughout the United States.

12. The Plaintiff introduced the Defendants to her various contacts in the dental industry located throughout the United States.

13. At all material times, Curren Jr. was the Chairman, Pease was the President, Curren, III, was the Vice President, and M. Curren was the Chief Financial Officer at Pease & Curren and Pease & Curren Materials.

14. Prior to Bergevine's employment relationship with the Defendants, Pease & Curren and Pease & Curren Materials did not actively market and solicit the dental profession in an effort to obtain various precious metals for refining.

15. The Plaintiff primarily worked from her home in Massachusetts.

16. Approximately one (1) day per week, the Plaintiff would attend work at the offices of the Defendants Pease & Curren and Pease & Curren Materials in Warwick, Rhode Island.

17.     The Plaintiff's primary responsibility was to solicit business, including attending trade shows, making telephone sales calls and following up on client contacts.

18.     In exchange for her work, from August, 1996 until December, 2001, the Defendants paid the Plaintiff a stipend of Two Hundred Dollars ($200.00) per week for the first two (2) years and Three Hundred Dollars ($300.00) per week, thereafter.

19.     Additionally, for each job or "lot" that she brought to the Defendants, the Plaintiff received a commission of Fifty Dollars ($50.00) in the first two (2) years, and Seventy-Five Dollars ($75.00) thereafter.

20.     Finally, the Plaintiff would receive additional commissions for each job or "lot" based on the total weight of each of the metals refined.

21.     For a "melt job", the Plaintiff would receive One Dollar ($1.00) for each troy ounce of each metal received and for a "sweep", the Plaintiff would receive Five Dollars ($5.00) for each troy ounce of each metal recovered.

22.     The Defendants would prepare a report (hereinafter, "Report") from each "lot" refined or "assayed" and would then issue a check to the client based on the market value of the respective total weight of each of the metals comprising the lot.

23.     The Plaintiff prepared and submitted monthly invoices for her commission based upon the Reports provided to her by the Defendants.

24.     The Defendants paid the Plaintiff once a week for the stipend and once a month for commissions with a company check.

25.     The checks were issued from Pease & Curren's payroll department and were signed by Pease.

26.     In or around December, 2001, the Defendants modified the Plaintiff's employment terms and hired the Plaintiff as a salaried employee of the corporation.

27.     Based upon the amount of money received by the Plaintiff for the partial year of employment through June, 2002, the Plaintiff's annual compensation would have been approximately One Hundred Thousand Dollars ($100,000.00), including the commissions on the lots, melts and sweeps as previously described herein.

28.     Throughout the course of her employment relationship with the Defendants, the Plaintiff regularly received phone calls and letters from a number of her clients asking for the Defendants to re-assay the lots, because the weights and corresponding reimbursements seemed low by their previous numbers.

29.     The majority of the times that a lot was re-assayed, the Defendants would claim that the original numbers were correct.

30.     In June, 2002, a colleague of the Plaintiff discovered another database at the Defendants' offices in Warwick, RI containing files with reports detailing different amounts for many of the lots.

31.     The colleague informed the Plaintiff of the additional database and further indicated to the Plaintiff that the reports in the database contained the actual amount of each metal refined on each lot.

32.     After comparing the files in the database to those reports that the Plaintiff and the clients received from the Defendants, the Plaintiff and her colleague discovered that the Defendants were systematically lowering the reported weights and percentage of metals recovered to defraud their clients, employees and the Plaintiff.

33.     By lowering the amount of weight or percentage of each metal recovered, the Defendants paid less money to the clients and fewer commissions to the Plaintiff, and concealed the actual value of the lots assayed and recovered.

34.     The Plaintiff reviewed the fraudulent documentation and then, in June, 2002, the Plaintiff contacted the Federal Bureau of Investigation ("FBI") to report the fraud.

35.     On the advice of the FBI, the Plaintiff gave her notice to the Defendants in July, 2002 and left immediately thereafter.

36.     The Plaintiff immediately began to suffer nightmares, stomach illness and constant fear, anxiety and panic relating to the discovery and reporting of the fraud.

37.     In or around June, 2003, after a year of panic attacks, stomach illness and nightmares, the Plaintiff began treating with a physician and taking medication for her distress.

38.     Soon after the report was made to the FBI, the FBI requested that the Rhode Island Financial Crimes Unit of the State Police take over the investigation and that investigation is ongoing.

39.     Upon information and belief, the Defendants systematically defrauded their clients and the Plaintiff in order to conceal the actual amounts of metals refined and recovered.

40.     Upon information and belief, the Plaintiff estimates that she has been defrauded in payment of commissions in the approximate total amount of One Hundred Fifty Thousand Dollars ($150,000.00).

41.     The Defendants derived a significant amount of income from their fraudulent conduct.

42. Upon information and belief, the Defendants invested some part of the fraudulently derived income into the business in which they are currently engaged, i.e. the business of refining metals, and into other enterprises.

## CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract
### (Bergevine v. Pease & Curren, Inc. and Pease & Curren Materials, Inc.)

43. The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-42, as though fully set forth herein.

44. The Plaintiff performed work as a dental account representative for the Defendants from August, 1996 to June, 2002.

45. The Defendants would prepare a report from each lot assayed and refined and would then issue a check to the client based on the market value of the weights and percentages of the metals refined and recovered.

46. The Plaintiff prepared and submitted monthly invoices for her commission based upon the reports.

47. The Defendants paid the Plaintiff with checks issued by Pease & Curren, and the checks were issued from Pease & Curren's payroll department and signed by the President, Pease.

48. In or around December, 2001, the Defendants modified the Plaintiff's employment terms and hired the Plaintiff as a salaried employee of the corporation with an average salary of approximately One Hundred Thousand Dollars ($100,000.00) per year including the commissions on the lots, melts and sweeps as described herein.

49. Based upon the course of dealing between the Plaintiff, as an Independent Contractor, and the Defendants, as the recipient of her efforts, as well as the Plaintiff's salaried employment with the Defendants, the Plaintiff and the Defendants maintained an Employment Contract (the "Contract") regarding the terms of the Plaintiff's employment.

50. In accordance with that Contract, the Defendants had a duty to pay the Plaintiff as agreed.

51. The Defendants breached that duty by systematically defrauding the Plaintiff.

52. Specifically, by submitting falsified reports to the Plaintiff containing lower amounts of the weights of the metals refined, the Defendants caused the Plaintiff to be paid less than the amount called for by the Contract.

53. If the Defendants had not falsified the reports, the Plaintiff would have received significantly more income on the lots that she secured for Pease & Curren.

**WHEREFORE**, the Plaintiff seeks judgment against the Defendants for a sum to be determined at trial, plus interest, attorneys' fees and court costs.

## COUNT II
### Fraud
### (Bergevine v. All Defendants)

54. The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-53, as though fully set forth herein.

55. By intentionally and systematically falsifying the reports from the assays of the lots brought in by the Plaintiff, the Defendants materially misrepresented certain facts to the Plaintiff regarding the amounts of metals recovered, thereby causing the Plaintiff to base her invoices for payment upon falsified reports.

56. The Defendants intended the Plaintiff to rely on the falsified reports in order to pay her less money in commissions.

57. A substantial portion of the Plaintiff's income was based upon the reports and the Plaintiff relied upon the falsified information.

58. The Plaintiff reasonably relied on the representations of the Defendants to her detriment.

**WHEREFORE,** the Plaintiff has suffered monetary damages in the approximate amount of One Hundred Fifty Thousand Dollars ($150,000.00) as a result of the Defendants' fraudulent conduct and demands judgment against the Defendants in an amount to be proven at trial, plus interest and court costs.

### COUNT III
### Violations of the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962 *et. seq.*
### (Bergevine v. All Defendants)

59. The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-58, as though fully set forth herein.

60. The Defendants are engaged in an enterprise which affects interstate commerce.

61. The Defendants systematically defrauded the Plaintiff, and their clients, by misrepresenting the amounts of metals refined on the lots received.

62. By preparing false reports, the Defendants derived income from the additional metals refined.

63. The Defendants also derived income by paying lower commissions to the Plaintiff based upon the numbers reported in the falsified records.

64. The Defendants are each a "person" under 18 U.S.C. §§ 1962 *et. seq.*

65.     The Defendants used or invested, directly or indirectly, part of that income or the proceeds of that income, to continue the operation of the enterprise in which they are engaged.

66.     Upon information and belief, the Defendants used or invested, directly or indirectly, part of that income or the proceeds of that income to acquire an interest in, establish or operate other enterprises.

67.     The Plaintiff suffered a racketeering injury by reason of the Defendants' pattern of racketeering behavior.

68.     Pursuant to 18 U.S.C. § 1964 (c), the Plaintiff is entitled to treble damages and attorneys' fees.

**WHEREFORE**, the Plaintiff has suffered monetary damages as a result of the Defendants' violations of the Racketeer Influence and Corrupt Organizations Act and demands judgment against the Defendants in an amount to be proven at trial, plus treble damages, interest, court costs and attorneys' fees.

**COUNT IV**
**Negligence**
**(Bergevine v. All Defendants)**

69.     The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-68, as though fully set forth herein.

70.     The Defendants negligently and carelessly maintained, supervised and operated the business practices of Pease & Curren.

71.     In accordance with their Contract with Bergevine, the Defendants had a duty to maintain, supervise and operate their business lawfully.

72.     The Defendants also had a duty to provide accurate assay Reports to the Plaintiff in order to accurately determine the amount of her commissions.

73.     By allowing inaccurate reports to be submitted to the Plaintiff containing lower amounts of the weights of the metals refined and recovered, the Plaintiff received less commission monies than the amount to which she was entitled.

**WHEREFORE,** the Plaintiff has suffered damages as a result of the Defendants' negligent conduct and demands judgment against the Defendants in an amount to be proven at trial, plus interest and court costs.

## COUNT V
### Negligent Misrepresentation
### (Bergevine v. All Defendants)

74.     The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-73, as though fully set forth herein.

75.     The Defendants negligently represented the terms of the Plaintiff's employment and the total amounts of weights refined upon which the Plaintiff relied.

76.     The Defendants knew or should have known that the Plaintiff would reasonably rely on the Defendants' representations.

77.     The Plaintiff relied upon the Defendants' representations to her detriment.

78.     As a result of the foregoing, the Defendants have caused the Plaintiff to suffer damages.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants for negligent misrepresentation and an award of damages in an amount to be proven at trial, plus interest and court costs.

## COUNT VI
### Negligent Infliction of Emotional Distress
### (Bergevine v. All Defendants)

79. The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-78, as though fully set forth herein.

80. The Defendants had a duty to conduct their business in accordance with state and federal laws.

81. The Defendants breached that duty by intentionally and systematically defrauding their clients and the Plaintiff.

82. The breach of that duty, and the Plaintiff's discovery and reporting of same, caused the Plaintiff to suffer nightmares, stomach illness and constant fear, anxiety and panic.

83. The symptoms experienced by the Plaintiff were reasonably foreseeable.

84. The Defendants' breach of their duty to conduct their business in accordance with state and federal laws has caused the Plaintiff to experience emotional distress and physical harm.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants for negligent infliction of emotional distress and an award of damages in an amount to be proven at trial, plus interest and court costs.

## COUNT VII
### Intentional infliction of Emotional Distress
### (Bergevine v. All Defendants)

85. The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-84, as though fully set forth herein.

86. The Defendants had a duty to conduct their business in accordance with state and federal laws.

87.     The Defendants breached that duty by intentionally and systematically defrauding their clients and the Plaintiff.

88.     The systematic defrauding of the Defendants' clients and the Plaintiff, which was a violation of federal and state law, constitutes a reckless disregard of the probability that discovery of the fraud would cause emotional distress to the Plaintiff.

89.     The act of an employer committing this type of fraud against its clients and employees is an extreme and outrageous act.

90.     The falsification of the records by the Defendants, and the Plaintiff's subsequent discovery and reporting of same, caused the Plaintiff to suffer distress, including anxiety, nightmares, depression, stomach pain and phobias.

**WHEREFORE**, the Plaintiff demands judgment against the Defendants for intentional infliction of emotional distress and an award of damages in an amount to be proven at trial, plus interest and court costs.

### COUNT VIII
### Violations of Mass. Gen. Laws ch. 93A, *et. seq.*
### (Bergevine v. All Defendants)

91.     The Plaintiff incorporates by reference herein the allegations contained in Paragraphs 1-90 as though fully set forth herein.

92.     The Defendants are engaged in trade or commerce as defined by Mass. Gen. Laws ch. 93A, *et. seq.*

93.     The Defendants' conduct, including willful breach of contract and fraud, constitute unfair and deceptive acts or practices.

94.     By virtue of the above conduct, the Defendants engaged in unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A, *et. seq.*

**WHEREFORE**, the Plaintiff suffered monetary damages as a result of the Defendants' conduct in violation of Mass. Gen. Laws ch. 93A, *et. seq.*, entitling the Plaintiff to treble damages and attorney's fees, plus interest and costs.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

    Respectfully submitted,
PATRICIA BERGEVINE,
By her attorneys,

_____
Gregory J. Aceto, Esq.
 (BBO No. 558556)
Erin J. Brennan, Esq.
 (BBO No. 660097)
JOHNSON & ACETO, LLP
67 Batterymarch Street
Boston, MA  02110
(617) 728-0888

Dated: April __, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.    05-11395-RCL

PATRICIA BERGEVINE,
    Plaintiff,

v.

PEASE & CURREN, INC, PEASE & CURREN
MATERIALS, INC., FRANCIS H. CURREN, JR.,
ROBERT H. PEASE, JR., FRANCIS H. CURREN,
III A/K/A KIP CURREN AND MEREDITH A.
CURREN.
    Defendants.

---

### PROPOSED ORDER

---

**THIS MATTER** having come before the Court on Plaintiff's Motion for Leave to Amend Complaint to Add a Count for Violations of Mass. Gen. Laws, ch. 93A, *et. seq.*, and after review of the Motion and the evidence submitted at the hearing, the Court hereby finds that amendment of the Plaintiff's Complaint with regard to the claims for relief under Rule 15(d) is necessary if complete relief is to be granted.  **It is therefore adjudged and ORDERED:**

That Plaintiff's Motion is **GRANTED**, that Count VIII for Violations of Mass. Gen. Laws, ch. 93A, *et. seq.* be added to Plaintiff's Complaint, and that Plaintiff's Proposed Amended Complaint is allowed.

_____
Lindsay, J., United States District Court

Dated:   April _____, 2006