UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action
No. 05 11395 RCL

PATRICIA BERGEVINE,
        Plaintiff

v.

PEASE & CURREN, INC., PEASE &
CURREN MATERIALS, INC., ROBERT H.
PEASE, JR., FRANCIS H. CURREN, JR.,
FRANCIS H. CURREN, III A/K/A KIP
CURREN, AND MEREDITH CURREN
        Defendants

### DEFENDANTS' MOTION TO COMPEL PLAINTIFF TO PROVIDE AUTHORIZATION FOR RELEASE OF PLAINTIFF'S PSYCHIATRIC AND OTHER COUNSELING RECORDS

Now comes the defendants and respectfully request that this Honorable Court order the plaintiff, Patricia Bergevine, to provide the defendants with an Authorization for the Release of records pertaining to Plaintiff's psychiatric and/or psychological treatment.

Because plaintiff claims that defendants' alleged misconduct caused her emotional distress and injury which required psychiatric treatment and counseling, she has put her emotional health at issue. Accordingly, the defendants assert that the plaintiff's psychiatric and counseling records are relevant to the plaintiff's claim for emotional distress.

I.    **BACKGROUND**

This action arises out of claims by plaintiff against her former employer, Pease & Curren, a precious metal refining business. Plaintiff alleges that from 1996 to 2002 she worked as a salesperson for Pease & Curren's dental customers, soliciting business from those customers who would submit their metal scraps to Pease & Curren for refining. The plaintiff claims she received a base pay plus commissions on her sales to the dental laboratories and other clients based upon the weight of the metal resulting after the refining process. According to the plaintiff, a co-worker learned in 2002 that Pease & Curren was allegedly maintaining two data bases regarding the amounts of metals that were refined. She claims that one of the data bases represented the actual amount of the metal that was refined and that this was not the amount used in paying the customer

or for calculating her commission. She alleges that a second data base existed, with systematically lower amounts, and that this was used to calculate the amount due to the customer and to the plaintiff for her commissions. The plaintiff, however, was unaware that the second data base was actually a tracking data base and did not reflect the amount of metal recovered by Pease & Curren.

In her complaint, the plaintiff claims defendants' alleged misconduct caused her "to experience emotional distress and physical harm," for which she seeks monetary recovery. Complaint at ¶ 84. Plaintiff claims the alleged improprieties of the defendants caused her to experience "panic attacks, stomach illness, and constant fear, and anxiety." Complaint at 111136, 82. She alleges that as a result of her emotional injury, she "began treating with a physician and taking medication for her distress." Id. at 36. During her deposition, plaintiff testified that as a result of defendants' alleged misconduct, she saw a psychiatrist, Dr. Cynthia Berry, who prescribed two different anti-depressants as part of plaintiff's treatment. Deposition of Patricia Bergevine, April 2, 2006, p. 11, line 13 - p. 17, line 15, attached as Exhibit 1 to Affidavit of Laura Ryan. Plaintiff also testified that in connection with the emotional injury that was allegedly caused by defendants' purported misconduct, she treated with Berry Giordano, a therapist from Dr. Berry's office. Id. at p. 24, line 1 - p. 27, line 9, attached as Exhibit 1 to Affidavit of Laura Ryan.

Counsel for defendants have requested that plaintiff sign releases authorizing Dr. Berry and Mr. Giordano to produce their records relating to plaintiff's psychiatric and/or psychological treatment to counsel. Counsel for plaintiff has advised that plaintiff is "mulling over" whether to sign the releases. Additionally, defendants propounded interrogatories to plaintiff seeking "detailed information regarding medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your complaint, including the name and addresses of all providers, a full description of all treatments and medication and an itemized account of all expenses incurred for that treatment." (See, Plaintiff's Answers to Defendants' Interrogatories, attached as Exhibit 3 to Affidavit of Laura Ryan). Plaintiff's answer to this interrogatory identified only Dr. Brown (and not Mr. Giordano) and two unidentified medications. Plaintiff gave no dates, no address for Dr. Brown, no description of the treatment she received from Dr. Brown, and no mention of Mr. Giordano, the treatment she received from him, the dates of treatment nor his address. Nor did she provide the identity or the medications prescribed, or the expenses incurred in connection with the treatment. By letter dated April 11, 2006, counsel for defendants requested that plaintiff supplement her answer to this interrogatory, but, to date, there has been no response. (See, Letter dated April 11, 2006, from Laura Ryan to Erin Brennan, asking that plaintiff supplement her interrogatory answers, attached as Exhibit 4 to Affidavit of Laura Ryan).

3

## II.   **ARGUMENT**

Where as here, an action is brought under the Court's diversity jurisdiction, discovery disputes regarding the existence of a possible waiver of an evidentiary privilege, state law applies. Sorenson v. H & R Block, 197 F.R.D. 199, 202 (D. Mass. 2000). Under Massachusetts law, in court proceedings, a patient has "the privilege of refusing to disclose .. any communication .. . between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition." M.G.L. c. 233, §20B. However, the privilege does not apply to "where the patient's mental or emotional condition is in issue and the judge finds that it is more important to the interests of justice that the communication be disclosed than that the relationship between patient and psychotherapist be protected." Id.

Thus, while Massachusetts recognizes a psychotherapist-patient privilege, it has created an exception where the "patient introduces his mental or emotional condition as an element of his claim or defense" and the court finds that, in the interests of justice, disclosure of the records outweighs protecting the patient-psychotherapist relationship. In construing this statutory privilege and the waiver exception, courts applying Massachusetts law hold that where, as here, one of the principal claims at issue in a case is a claim for emotional distress or damage to mental faculties, the privilege is deemed waived. See, Sorenson v. H&R Block, Inc., 197 F.R.D. 199, 204 (D.Mass. 2000) (where plaintiff alleges claims of 'mental damage,' 'psychic damage,' or 'impairment of mental health- the privilege is deemed waived); Jacobs v. Vachon, 11 Mass.L.Rptr. 307 (Mass. Super. 2000) (although asserting a "garden variety claim of emotional distress" does not waive the privilege, any claim of "mental damage," "psychic damage" or "impairment of mental health" operates as a waiver); Kippenhan v. Chaulk Services, Inc., 2 Mass.L.Rptr. 121 (Mass. Super. 1994) (holding that where plaintiffs alleged emotional distress and injury which necessitated psychiatric treatment resulting from defendant's negligence, psychotherapist was ordered to produce records); Perrin v. S & A Enterprises, Inc., 1999 WL 1327665 (Mass.Super. 1999) (holding that plaintiff waives the privilege where he alleges a "psychic injury or psychiatric disorder.") Perrin v. S.&A. Enterprises, 1999 WL 1327665 (Mass. Super. 1999) (a plaintiff seeking damages for emotional distress does not waive the privilege unless there is also an allegation of "psychological injury which necessitated psychiatric treatment").

In this case, the interests of justice require that the documents be produced. Plaintiff has clearly introduced her mental and emotional condition as an element of her claim, and she alleges far more than a "garden variety" claim for emotional distress. Instead, plaintiff has asserted a claim for infliction of emotional distress for which she seeks damages from the defendants. She claims that defendants' alleged misconduct caused her "to experience emotional distress and physical

4

harm," and to experience "panic attacks, stomach illness, and constant fear, and anxiety," which required treatment from a physician and medication. By making these allegations, plaintiff has squarely placed her emotional condition at issue, and therefore, she has waived the psychotherapist-patient privilege. Accordingly, plaintiff's psychiatric, counseling and other psychotherapy records are subject to discovery.

### III.    CONCLUSION

For the foregoing reasons, the defendants respectfully request that the plaintiff, Patricia Bergevine, be ordered to provide an authorization for the release of these records to the defendants.

Defendants, By their Attorneys,

_____

/s/ Joseph H. Aronson
/s/ Laura G. Ryan
Joseph H. Aronson [BBO #022070]
Laura G. Ryan [BBO #653793]
THE McCORMACK FIRM, LLC
One International Place
Boston, MA 02110
(617) 951-2929

### CERTIFICATION OF GOOD FAITH

I hereby certify that I have conferred with Counsel for Plaintiff in good faith to resolve or narrow these issues pursuant to LR 7.1(A)(2).

_____

/s/ Laura G. Ryan
Laura Ryan

5

## CERTIFICATE OF SERVICE

I, Laura G. Ryan, hereby certify that on September 21, 2006, the foregoing document, Defendants' Motion to Compel Plaintiff to Provide Authorization for Release of Plaintiff's Psychiatric and Other Counseling Records, which is being filed through the ECF system, was served electronically to the following recipient identified as a registered participant on the Notice of Electronic Filing (NEF):

> *Gregory Aceto, Esq.*
> *Johnson & Aceto, PC*
> *67 Batterymarch Street*
> *Boston, MA 02210*

In addition, a copy of the foregoing Defendants' Motion to Compel Production of Plaintiff's Tax Returns was served via first class mail on September 21, 2006 upon the following attorney of record, who has not been identified as an ECF recipient:

> *Bruce Gladstone, Esq.*
> *Cameron & Mittleman, LLP*
> *56 Exchange Terrace, Suite 2*
> *Providence, RI 02903-1766*

/s/ Laura G. Ryan
Laura G. Ryan

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action
No. 05 11395 RCL

PATRICIA BERGEVINE,
     Plaintiff

v.

PEASE & CURREN, INC., PEASE &
CURREN MATERIALS, INC., FRANCIS H.
CURREN, III A/K/A KIP CURREN, AND
MEREDITH CURREN
     Defendants

**AFFIDAVIT OF LAURA RYAN IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL TO COMPEL PLAINTIFF TO PROVIDE AUTHORIZATION FOR
RELEASE OF PLAINTIFF'S PSYCHIATRIC AND OTHER COUNSELING RECORDS**

I, Laura Ryan, hereby state, under oath, the following:

1.  I am a member in good standing of the Bar of the Commonwealth of Massachusetts. I am an attorney at the law firm of the McCormack Firm, LLC, and represent the defendants in the above-captioned action.

2.  Attached hereto as <u>Exhibit 1</u> are true and accurate copies of relevant portions from the transcript Deposition of Patricia Bergevine, April 12, 2006, p. 11, line 13 - p. 17, line 15, attached to Affidavit of Laura Ryan.

3.  Attached hereto as <u>Exhibit 2</u> is a true and accurate copy of Defendants' Interrogatories to Plaintiff.

4.  Attached hereto as <u>Exhibit 3</u> is a true and accurate copy of Plaintiff's Answers to Interrogatories Propounded by the Defendants.

5.  Attached hereto as <u>Exhibit 4</u> is a true and accurate copy of an April 11, 2006, letter from counsel for defendants, Laura Ryan, to counsel for plaintiff, Erin Brennan, requesting that plaintiff supplement her answers to defendants' interrogatories.

**SIGNED UNDER THE PENALTIES OF PERJURY THIS 21st DAY OF September, 2006.**

/s/ Laura G. Ryan

2

## CERTIFICATE OF SERVICE

I, Laura G. Ryan, hereby certify that on September 21, 2006, the foregoing document, Affidavit of Laura Ryan in Support of Defendants' Motion to Compel Plaintiff to Provide Authorization for Release of Her Psychiatric and Counseling Records, which is being filed through the ECF system, was served electronically to the following recipients identified as a registered participant on the Notice of Electronic Filing (NEF):

> *Gregory Aceto, Esq.*
> *Erin Brennan*
> *Johnson & Aceto, PC*
> *67 Batterymarch Street*
> *Boston, MA 02210*

In addition, a copy of the foregoing Affidavit of Laura Ryan in Support of Defendants' Motion to Compel Plaintiff to Provide Authorization for Release of Her Psychiatric and Counseling Records was served via first class mail on September 21, 2006 upon the following attorney of record, who has not been identified as an ECF recipient:

> *Bruce Gladstone, Esq.*
> *Cameron & Mittleman, LLP*
> *56 Exchange Terrace, Suite 2*
> *Providence, RI 02903-1766*

> /s/ Laura G. Ryan
> Laura G. Ryan

89278.1

# Bergevine
## vs.
## Pease & Curren, et al.

# Patricia Bergevine

### Volume 1

April 12, 2006
pp 1-234



ae orating
PA /if Y

Two Oliver Street, Suite 804
Boston, MA 02109
617-451-8900
info@jonesreporters.com
www.jonesreporters.com

Patricia Bergevine

Page 10

1    A.  1979.
2    Q. And did you then immediately attend Fisher
3  College?
4    A.  I went nights for years.
5    Q. What type of program were you enrolled in
6  at Fisher?
7    A. Business degree.
8    Q. Did you obtain a degree there?
9    A. Yes.
10    Q. What type of degree did you obtain?
11    A. Associates in Business.
12    Q. Do you have a recollection of when you
13  received that, approximately?
14    A.  Uh, 1994.
15    Q. And did you receive any further degrees
16  after that?
17    A. Additional course work at Bryant. I never
18  finished my BA.
19    Q. Okay. So you have an associates degree in
20  business; is that correct?
21    A. Correct.
22    Q. Have you ever been a plaintiff in a lawsuit
23  before?
24    A. Never.

Page 11

1    Q. Have you ever been a defendant in a
2  lawsuit?
3    A. No.
4    Q. Have you been convicted of a felony within
5  the last ten years?
6    A. No.
7    Q. Have you been convicted of a misdemeanor
8  within the last five years?
9    A. Does that include like a parking ticket? I
10  don't --
11    Q. Let's exclude parking tickets.
12    A. No.
13    Q. Okay. Now, are you currently under the
14  care of a psychiatrist or psychologist?
15    A. Not now.
16    Q. Have you been at some point in the past?
17    A. Yes.
18    Q. When were you first under the care of a
19  psychiatrist or psychologist?
20    A. I don't recall the exact date, but it was
21  after.
22    Q. If you can just give us your best estimate,
23  that would be helpful.
24    A. It was probably sometime in 2003.

Page 12

1    Q. And do you remember what part of 2003; the
2  beginning, middle or end?
3    A.  I think it was springtime.
4    Q. Okay.
5    A. But I'm not a hundred percent.
6    Q. Okay. Who did you treat with at that point
7  in time?
8    A. Um, her name was Cynthia Berry.
9    Q. Where is her practice located?
10    A.  It's in North Attleboro.  I'm not --
11    Q. Do you know the street address?
12    A. She moved. It was on Richards Ave., but
13  she's moved since then. I don't know where she
14  moved to.
15    Q. Can you give us a sense of how long you
16  treated with Cynthia Berry?
17    A. I don't believe it was longer than three
18  months.
19    Q. Was that the first time in your life that
20  you had treated with a psychologist, psychiatrist
21  or counsellor?
22    A.  No.
23    Q. When did you first treat with a
24  psychiatrist, psychologist or counsellor?

Page 13

1    A. My husband and I together, probably -- I
2  can tell you exactly. Jordan is 16 -- 13 years ago
3  we -- we went to a couple of counselling sessions
4  13 years ago.
5    MR. ACETO: These questions are about
6  mental health care.
7    A. Oh, no.
8    Q. (BY MR. ARONSON) You went to a marriage
9  counsellor back in about 1993 or so; is that right?
10    A. Yeah, a couple of times.
11    Q. Okay. In terms of anything outside of
12  marriage counselling, did you receive any
13  psychiatric or psychological treatment?
14    A. No.
15    Q. Who did you see in 1993, if you remember?
16    A.  I don't.
17    Q. Did you first see Cynthia Berry in 2003, or
18  had you seen her on prior occasions?
19    A. I had never seen her on prior occasions.
20    Q. How is it that you got to see her in 2003?
21    A. Urn, just extreme anxiety. I was trying to
22  figure out a way to get rid of my anxiety.
23    Q. Did somebody refer you to Cynthia Berry?
24    A. Yeah, my sister-in-law.

4 (Pages 10 to 13)

Page 14

1    Q. What is her name, please?
2    A. Cindy Bergevine.
3    Q. And where does she live?
4    A. North Attleboro.
5    Q. Do you know the street address?
6    A. 417 Kelly Boulevard.
7    Q. And she suggested you see Cynthia Berry; is
8  that correct?
9    A. No, I was just asking, did she -- had she
10  gone to anybody. She said she'd heard she was a
11  good person.
12    Q. And is Cynthia Berry a psychiatrist,
13  psychologist or something else?
14    A. I don't remember.
15    Q. How many visits did you have with her over
16  the three-month period that you treated with her?
17    A. I would say between six and eight.
18    Q. When would you typically see her during the
19  course of a day? Would it be at the end of the
20  day, the middle of the day, or at some other point
21  of time?
22    A. I don't recall exactly. Varied; varied
23  times.
24    Q. Did you know her prior to your first

Page 15

1 treatment with her?
2    A. No.
3    Q. And did she ever prescribe any medication
4 for you?
5    A. Yes.
6    Q. What medication did she prescribe for you?
7    A. There were two medications. She would have
8 those records.
9    Q. Did you take the medications?
10    A. I tried -- I know I tried two different
11 medications.
12    Q. Do you know what the name of those
13 medications were?
14    A. I don't. I don't. It wasn't the normal
15 one that everybody -- you know, it wasn't Prozac.
16 I think that's the popular one. There were two
17 different names.
18    Q. Cynthia Berry gave you a prescription that
19 you took to a pharmacy; is that right?
20    A. Yes.
21    Q. And then you got some pills?
22    A. Mm-hmm.
23    Q. Is that yes, for the record?
24    A. Yes.

Page 16

1    Q. But you don't know what pills you took?
2    A. No.
3    Q. You have no idea what the name is?
4    A. I don't recall what the name of the
5 prescription is. She would have those records.
6    Q. And did you take the full prescription --
7    A. I believe, yes. Yes.
8    Q. -- for both pills? You used all the pills
9 in the bottle?
10    A. That's my -- yes.
11    Q. Okay. And did you go back to refill the
12 prescriptions at some point?
13    A. I did not.
14    Q. Do you have any understanding as to what
15 those prescriptions were for?
16    A. Yes. They were supposed to help with
17 anxiety, help with extreme anxiety.
18    Q. Okay. What were your symptoms when you
19 went to Ms. Berry, Cynthia Berry for the first
20 time?
21    A. Urn, extreme anxiety, you know, lack -- just
22 extreme anxiety, no sleep.
23    Q. What were you anxious about?
24    A. I was anxious about what happened,

Page 17

1 unfortunately.
2    Q. What do you mean by that?
3    A. What happened with the, you know, going to
4 Greg four years ago and the FBI four years ago and
5 the state police.
6    Q. When you said Greg, you're talking about
7 Mr. Aceto?
8    A. Correct.
9    Q. Had you seen him before you went to
10 Ms. Berry?
11    A. I believe so, because he was one of the
12 first people. Yes.
13    Q. And you said you were having difficulty
14 sleeping; is that correct?
15    A. That is correct.
16    Q. When you first went to Cynthia Berry, were
17 you working?
18    A. Yes.
19    Q. That is, were you employed?
20    A. Yes, I was always employed.
21    Q. You were employed full-time?
22    A. Yes. Well, I was an independent
23 contractor.
24    Q. And were you productive at that point in

5 (Pages 14 to 17)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05 11395 RCL

PATRICIA BERGEVINE,

      Plaintiff

v.

PEASE & CURREN, INC.,
PEASE & CURREN MATERIALS, INC.,
FRANCIS H. CURREN, III A/K/A KIP
CURREN, AND MEREDITH CURREN,

      Defendants

### DEFENDANTS' INTERROGATORIES PROPOUNDED TO PLAINTIFF, PATRICIA BERGEVINE

Pursuant to Fed. R. Civ. P. 33, the defendants PEASE & CURREN, INC., PEASE & CURREN MATERIALS, INC., FRANCIS H. CURREN, III A/K/A KIP CURREN, AND MEREDITH CURREN, (collectively referred to as "Pease & Curren" or "defendants") request that plaintiff answer under oath the following interrogatories, and deliver them to the defendants' counsel, The McCormack Firm, One International Place, 7th Floor, Boston, Massachusetts on or before the 30th day following service of these interrogatories.

1.    Please identify yourself fully, giving your full name, date of birth, social security number, residential address, business address, occupation and name of your spouse, if married.

2.    Please set forth fully and in complete detail your employment history from June 2002 to the present, giving the names of all employers for whom you have worked, the nature of the work that you performed for each, your job title or position with each, the dates of your employment.

3.    Please set forth all facts, (including the names and addresses of all persons involved) upon which you base your claim that defendants "were systematically lowering the reported weights and percentages of metals recovered to defraud their clients, employees and plaintiffs."

2

4.      Please set forth all facts, (including the names and addresses of all persons involved) upon which you base your claim that defendants defrauded you by failing to pay "commission in the approximate total amount of On Hundred Fifty Thousand Dollars ($150,000)."

5.      Please set forth all facts upon which you base your claim that defendants "invested some part of the fraudulently derived income into the business in which they are currently engaged, i.e., the business of refining metals, and into other enterprises."

6.      Please set forth all facts upon which you base your claim that defendants breached your employment agreement "by systematically defrauding [you resulting in your] being paid less than the amount called for by the Contract."

7.      Please set forth all facts upon which you base your claim that defendants "materially misrepresented certain facts to [you] regarding the amounts of metals recovered, thereby causing [you] to base [your] invoices for payment upon falsified reports;"

8.      Please explain in detail your reason(s) for refusing to sign a confidentiality agreement while working for Pease & Curren.

9.      Please set forth all facts upon which you base your claim that for the year 2002, your "annual compensation would have been One Hundred Thousand Dollars ($100,000)."

10.     Please set forth all facts upon which you base your claim as set forth in your complaint that you "suffered a racketeering injury by reason of the Defendants' pattern of racketeering behavior."

11.     Please set forth in full and complete detail all damages (including expenses), losses or injuries suffered by you as a result of Pease & Curren's actions referred to in your complaint, giving the amounts of all alleged monetary damages, and a description of any emotional distress that you claim is attributable to those actions.

12.     If you received medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your Complaint, please state:
    a.      the name and address of any and all persons, hospitals, counselors, social, workers, or other providers from which you received medical or other

3

       treatment;

b.      a full and complete description of all treatments, medication and tests that you received, including the dates of each, and the person or facility by whom/which each was administered; and

c.      an itemized account of all expenses incurred for the treatment referred to above.

13. Please identify by full name, residential address, name of employer, business address, relationship to you, if any, each person who witnessed and/or has knowledge of the occurrences alleged in your complaint, stating with respect to each such person the facts which he or she witnessed or of which he/she has knowledge.

14. Please identify by full name, residential address, name of employer, business address of each person whom you expect to call as an expert witness at trial, and state as to each such person:

a.      all background information by which you intend to qualify each such person as an expert witness;

b.      the subject matter on which each such expert is expected to testify;

c.      the substance of the facts to which each such expert is expected to testify;

d.      the substance of opinions to which each such expert is expected to testify; and

e.      a summary of the grounds for each opinion to which each such expert is expected to testify.

15.      Please set forth all facts upon which you base your claim as set forth in your complaint that "Defendants negligently and carelessly maintained, supervised and operated the business practices of Pease & Curren."

16.      Please set forth all facts upon which you base your claim that you are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. § 1964(c).

17. If you had or overheard any conversations with any agent or employee of Pease & Curren regarding the subject matter referred to in your complaint, please state the full names of all persons involved, the substance of each such conversation and the dates thereof.

4

18.    Please set forth all facts upon which you base your claim that defendants' alleged "breach of their duty to conduct their business in accordance with state and federal laws has caused the Plaintiff to experience emotional distress and physical harm."

19.    If you were treated by any psychiatrist, psychologist, counselor, social worker, or other provider for any emotional or psychiatric issues from January 1, 1996 to the present (excluding those identified in response to Interrogatory no. 12), please give the full name and address of the provider, the dates of treatment, and the nature and reason for such treatment.

20.    Please set forth your gross annual earnings for the years 1997 to 2001.

21.    Please describe in full and complete detail the circumstances under which you obtained employment with Advanced Chemicals, Co., stating the dates of all occasions you communicated with Advance Chemicals regarding working for Advanced Chemicals, with whom you spoke and the content of the discussions.

22.    Please set forth in full and complete detail:

    (a) the process and all steps performed by Pease & Currren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren;

    (b) when you first acquired knowledge of the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren;

    (c) give the names and addresses of any persons who provided this information to you; and

    (d) identify by full named the individual(s) who supervised or oversaw the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers

5

during the time you were employed by Pease & Curren; and

(e) give the full names of all other employees who participated in the
process and/or work to determine the weight and percentages of the
metals recovered.

23.     Please set forth in full and complete detail the terms of your employment with Advanced
Chemicals Co., giving the terms of your compensation and or commissions, and whether you had
a written employment contract.

24.     Please set forth in itemized form your annual earnings from the date you left Pease &
Curren to the present, giving the year (or partial year if less) the names and address of your
employers, or contractors, and the amount received from each.

25.     Please describe in full and complete detail any communications that you had with any
government agency or police department (state of federal) regarding Pease & Curren, giving the
date of such communications, the agencies and persons involved; the substance of such
communications were in writing.

The defendants,
By their Attorneys,


Joseph H. Aronson          BO #022070
Laura G. Ryan              BBO #653793
**THE MCCORMACK FIRM, LLC**
One International Place
Boston, MA     02110
(617) 951-2929

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11395 RCL

PATRICIA BERGEVINE,
                            Plaintiff,

v.

PEASE & CURREN, INC.,
PEASE & CURREN MATERIALS, NC.,
ROBERT H. PEASE, JR., FRANCIS H.
CURREN, JR., FRANCIS H. CURREN III
A/K/A KIP CURREN, AND MEREDITH
CURREN,
                            Defendants.

**PLAINTIFF'S ANSWERS TO INTERROGATORIES PROPOUNDED BY THE
DEFENDANTS PEASE & CURREN, INC., PEASE & CURREN MATERIALS, INC.,
FRANCIS H. CURREN III A/K/A KIP CURREN AND MEREDITH CURREN**

NOW COMES the Plaintiff Patricia Bergevine (the "Plaintiff"), and pursuant to Rule 33

of the Massachusetts Rules of Civil Procedure, hereby answers the Defendants Pease & Curren,

Inc., Pease & Curren Materials, Inc., Francis H. Curren, III A/K/A Kip Curren and Meridith

Curren (collectively, the "Defendants")' First Set of Interrogatories as follows:

## GENERAL OBJECTIONS

A.    The Plaintiff objects to the Interrogatories insofar as they request information protected
      by the attorney-client privilege or attorney-work product doctrine.

B.    The Plaintiff objects to the overly broad and unduly burdensome nature of the
      interrogatories.

---

Two (2) additional defendants, Robert H. Pease, Jr. and Francis H, Curren, Jr., were omitted from the Defendants'
caption and are not listed on the Defendants' Interrogatories Propounded to Plaintiff.

## INTERROGATORIES

<u>INTERROGATORY NO. 1:</u>

Please identify yourself fully, giving your full name, date of birth, social security number, residential address, business address, occupation and name of your spouse, if married.

<u>ANSWER NO. 1:</u>

| | |
|---|---|
| Name: | Patricia A. Bergevine |
| DOB: | 9/18/1961 |
| Address: | 428 South Street, Plainville, MA |
| Bus. Address: | 26 Franklin Street, Wrentham, MA |
| Occupation: | Real Estate Sales |
| Spouse: | Dale Bergevine |

<u>INTERROGATORY NO. 2:</u>

Please set forth fully and in complete detail your employment history from June 2002 to the present, giving the names of all employers for whom you have worked, the nature of the work that you performed for each, your job title or position with each, the dates of your employment.

<u>ANSWER NO. 2:</u>

In June, 2002, I was employed by Pease & Curren as a sales representative. In July, 2002, I was unemployed. From August, 2002 through June, 2005, I worked as an independent contractor for Advanced Chemical and from July, 2005 through the present, I have worked in Real Estate Sales.

<u>INTERROGATORY NO. 3:</u>

Please set forth all facts, (including the names and addresses of all persons involved) upon which you base your claim that defendants "were systematically lowering the reported weights and percentages of metals recovered to defraud their clients, employees and plaintiffs."

<u>ANSWER NO. 3:</u>

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Answering further, please see

the allegations contained in Plaintiffs Complaint, dated July 1, 2005 (the "Complaint").

Subject to and without waiving the foregoing, the Plaintiff states as follows: As stated in

my Complaint, throughout the course of my employment relationship with the Defendants, I

regularly received phone calls and letters from a number of my clients asking for the Defendants

to re-assay the lots, because the weights and corresponding reimbursements seemed low by their

previous numbers. The majority of the times that a lot was re-assayed, the Defendants would

claim that the original numbers were correct. In June, 2002, a colleague of mine inadvertently

discovered another database at the Defendants' offices in Warwick, RI containing files with

reports detailing different amounts for many of the lots. The colleague, Bethany Warburton,

informed me of the additional database and indicated to me that the reports in the database

contained the actual amount of each metal refined on each lot. Bethany Warburton and I began

comparing the files in the database to those reports that I received from the Defendants, and

based upon the comparison, discovered that the Defendants were systematically lowering the

reported weights and percentage of metals recovered to defraud their clients, employees and me.

INTERROGATORY NO.4:

Please set forth all facts, (including the names and addresses of all persons involved)
upon which you base your claim that defendants defrauded you by failing to pay "commission in
the approximate amount of One Hundred Fifty Thousand Dollars ($150,000.00)."

ANSWER NO.4:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

3

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my Complaint. Answering further, my commissions and bonuses were based on the amount of metals recovered in each job or lot assayed. At times, I only received monetary bonuses if the total assayed amounts were over a certain weight for the quarter. By fraudulently lowering the weights reported to the clients and to me, the Defendants were able to pay the customers less for the jobs or "lots" and fewer commissions to me. Further, if the amounts assayed were less than the quarterly goals set for me, I also did not receive bonuses to which I was entitled.

INTERROGATORY NO. 5:

Please set forth all facts upon which you base your claim defendants "invested some part of the fraudulently derived income into the business in which they are currently engaged i.e., the business of refining metals, and into other enterprises."

ANSWER NO. 5:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to this interrogatory on the grounds that it seeks information which is more readily available to the Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint.

INTERROGATORY NO. 6:

Please set forth all facts upon which you base your claim that defendants breached your employment agreement "by systematically defrauding [you resulting in your] being paid less than the amount called for by the Contract."

ANSWER NO. 6:

Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a legal conclusion which is not within the reasonable knowledge of the Plaintiff. Subject to and without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's

4

Complaint.

INTERROGATORY NO. 7:

Please set forth all facts upon which you base your claim defendants "materially misrepresented certain facts to [you] regarding the amounts of metals recovered, thereby causing [you] to base [your] invoices for payment upon falsified reports."

ANSWER NO. 7:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 8:

Please explain in detail your reason(s) for refusing to sign a confidentiality agreement while working for Pease & Curren.

ANSWER NO. 8:

I was never asked to sign a confidentiality agreement while working for Pease & Curren.

INTERROGATORY NO. 9:

Please set forth all facts upon which you base your claim that for the year 2002, your "annual compensation would have been One Hundred Thousand Dollars ($100,000)."

ANSWER NO. 9:

The amount is based on what I had been paid in salary and commissions as of June, 2002,

or six (6) months into the year. The amount does not account for what I would have received

had the amounts of the metals assayed been reported accurately. If I had received accurate

reports, my compensation for the year 2002 would have been higher than One Hundred

Thousand Dollars ($100,000.00).

5

INTERROGATORY NO. 10:

Please set forth all facts upon which you base your claim as set forth in your complaint that you "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior."

ANSWER NO. 10:

Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a

legal conclusion which is not within the reasonable knowledge of the Plaintiff. Subject to and

without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's

Complaint.

INTERROGATORY NO. 11:

Please set forth in full and complete detail all damages (including expenses), losses or injuries suffered by you as a result of Pease & Curren's actions referred to in your complaint, giving the amounts of all alleged monetary damages, and a description of any emotional distress that you claim is attributable to those actions.

ANSWER NO. 11:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 12:

If you received medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your complaint, please state:

    a.    the name and address of any and all persons, hospitals, counselors, social workers, or other providers from which you received medical or other treatment;

     b.      a full and complete description of all treatments, medication and tests that you received, including the dates of each, and the person or facility by whom/which each was administered; and

     c.      an itemized account of all expenses incurred for the treatment referred to above.

ANSWER NO. 12:

I saw a psychiatrist named Cynthia Brown in North Attleboro, MA for approximately seven (7) to eight (8) visits. She prescribed me two (2) or three (3) different medications for the symptoms described in my Complaint, but when they did not work, I discontinued the medications and stopped seeing Dr. Brown.

INTERROGATORY NO. 13:

Please identify by full name, residential address, name of employer, business address, relationship to you, if any, each person who witnesses and/or has knowledge of the occurrences alleged in your complaint, stating with respect to each such person the facts which he or she witnessed or of which he/she has knowledge.

ANSWER NO.13:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to this interrogatory on the grounds that it seeks information which is more readily available to the Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint and Plaintiff's Initial Disclosures, dated January 6, 2006 ("Initial Disclosures"). Subject to and without waiving the foregoing, the following individuals are likely to have witnessed and/or have knowledge of the occurrences alleged in my Complaint: Francis H. Curren, Jr., Robert H. Pease, Jr., Francis H. Curren, III a/k/a Kip Curren, Meredith A. Curren and current and former employees of Pease & Curren, Inc. and Pease & Curren Materials, Inc., including, but not limited

to, Mike Gullison, Jennifer Leger, Dr. Raj Mishra, Paul Dion, Dale Westberg, Harry Howland,

Keith Edwards, Kathi Silva, Sandra Frappier, Brett Mastriano, Maryanne Borges, Debbie

DeBlois, Bethany Warburton, as well as Barbara McDonough and Detective Sergeant John

LeMont.

INTERROGATORY NO.14:

Please identify by full name, residential address, name of employer, business address of each person whom you expect to call as an expert witness at trial, and state as to each such person:

      a.    all background information by which you intend to qualify was such person as an expert witness;

      b.    the subject matter on which each such expert is expected to testify;

      c.    the substance of the facts to which each such expert is expected to testify;

      d.    the substance of opinions to which each such expert is expected to testify; and

      e.    a summary of the grounds for each such opinion to which each such expert is expected to testify.

ANSWER NO. 14:

The Plaintiff does not yet know whom she intends to call at trial as an expert witness.

The Plaintiff reserves the right to seasonably supplement this answer.

INTERROGATORY NO. 15:

Please set forth all facts upon which you base your claim as set forth in your complaint the "Defendants negligently and carelessly maintained, supervised and operated the business practices of Pease & Curren."

ANSWER NO. 15:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

8

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 16:

Please set forth all facts upon which you base your claim that you are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. § 1964 (c).

ANSWER NO. 16:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 17:

If you had or overheard any conversations with any agent or employee of Pease & Curren regarding the subject matter referred to in your complaint, please state the full names of all persons involved, the substance of each such conversation and the dates thereof.

ANSWER NO. 17:

I discussed the discrepancies in the database with Bethany Warburton and, after I left the

employ of the Defendants, I discussed the discrepancies with Dr. Raj Mishra.

INTERROGATORY NO. 18:

Please set forth all facts upon which you base your claim that defendants' alleged "breach of their duty to conduct their business in accordance with state and federal laws has caused the Plaintiff to experience emotional distress and physical harm."

ANSWER NO. 18:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint and Answer No. 11.

INTERROGATORY NO. 19:

If you were treated by any psychiatrist, psychologist, counselor, social worker, or other provider for any emotional or psychiatric issues from January 1, 1996 to the present (excluding those identified in response to Interrogatory no. 12), please give the full name and address of the provider, the dates of treatment, and the nature and reason for such treatment.

ANSWER NO. 19:

Other than the visits and psychiatrist identified in Answer No. 12, I was not treated by

any other provider for any emotional or psychiatric issues from January 1, 1996 to the present.

INTERROGATORY NO. 20:

Please set forth your gross annual earnings for the years 1997 to 2001.

ANSWER NO. 20:

1997: Approximately $28,000.00
1998: Approximately $34,000.00
1999: Approximately $41,000.00
2000: Approximately $49,000.00
2001: Approximately $54,000.00

INTERROGATORY NO. 21:

Please describe in full and complete detail the circumstances under which you obtained employment with Advanced Chemicals, Co., stating the dates of all occasions you communicated with Advanced Chemicals regarding working for Advanced Chemicals, with whom you spoke and the content of the discussions.

ANSWER NO. 21:

I was contacted by Advanced Chemicals a few weeks after I stopped working for Pease

& Curren and I interviewed with John Venditti, the Sales Manager. We met to discuss the

procedure for how I would call on the dental industry clients and, after that meeting, I became an

independent contractor, working as a representative for Advanced Chemicals.

INTERROGATORY NO. 22:

Please set forth in full and complete detail:

a.  the process and all steps performed by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren.

b.  when you first acquired knowledge of the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren;

c.  give the names and address of any persons who provided this information to you;

d.  identify by full name the individual(s) who supervised or oversaw the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren; and

e.  give the full names of all other employees who participated in the process and/or work to determine the weight and percentages of metals recovered.

ANSWER NO. 22:

a.  Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to this interrogatory on the grounds that it seeks information which is more readily available to the Defendants. Subject to and without waiving the foregoing, the Plaintiff states as follows: Generally, the dental labs would send their precious metal scrap to Pease & Curren and Pease & Curren would assay it and return back to the customer the value of their gold, silver, platinum and palladium. Specifically, when the materials arrived at the Pease & Curren facility, they would be weighed in a box for a "tare weight" in order to have an agreed-upon weight with the customer before processing. The shipment was then assigned a lot number. The lot number and

11

tare weight were recorded on an assay ticket. Depending on whether it was a high grade lot or

bullion lot, or a low grade lot, the metal was fire assayed or incinerated or ball milled or a

combination thereof in order to obtain a sample to determine the gold, silver, platinum and

palladium content. After that process, the metal is weighed again for an "after melt weight" and

then the sweeps are taken to the lab to be assayed for the actual amounts of each metal. A

metallurgist in the lab would determine the weights based on the assays and then take the

weights and record them on the assay ticket. After that, the assay ticket would go to a woman

named Sandy Frappier who would record the percentages into Tracking, or enter the data into the

computer database. Once the information was recorded, the assay tickets were handed off to one

of the three officers of Pease & Curren, usually Robert Pease, Jr., sometimes Kip Curren and

sometimes Meredith Curren. The results from the assay ticket would then be manually

transcribed by one of the three officers onto the customer ledger card and the assay card would

be incinerated. The payments to customers and reports for employees would be based on the

amounts entered into the accounting software and the Mail List Master from the customer ledger

card. Thereafter, the lots would be shipped out to a larger refinery for processing.

b.     Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff refers to the allegations in her Complaint and further states as

follows: I acquired knowledge of the process used by Pease & Curren to determine the weight

and percentages of metals recovered from dental customers when I first became employed by

Pease & Curren.

c.     Please see the names of former and current employees and officer identified in Answer

No. 13.

d.      The three principal officers oversaw the process: Robert Pease, Jr., Kip Curren and

Meredith Curren. Also, Paul Dion, Bob Alcock and Dr. Raj Mishra.

e.      As previously stated, Robert Pease, Jr., Kip Curren, Meredith Curren, Paul Dion and Bob

Alcock. Also Sandy Frappier, Marianne Borges, and any individual working in the lab.

INTERROGATORY NO. 23:

Please set forth in full detail the terms of your employment with Advanced Chemicals
Co., giving the terms of your compensation and or commissions, and whether you had a written
employment contract.

ANSWER NO. 23:

I was an independent contractor working from home and I was paid a small weekly

stipend plus thirty percent (30%) on profit dollars.

INTERROGATORY NO. 24:

Please set forth in itemized form you annual earnings from the date you left Pease &
Curren to the present, giving the year (or partial year if less) the names and address of your
employers, or contractors, and the amount received from each.

ANSWER NO. 24:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: In June, 2002 (six months into the calendar

year), my earnings were approximately $53,000.00.

INTERROGATORY NO. 25:

Please describe in complete and full detail any communications that you had with any
government agency or police department (state or federal) regarding Pease & Curren, giving the
date of such communications, the agencies and persons involved; the substance of such

13

communications were in writing.

<u>ANSWER NO. 25:</u>

I met with the Federal Bureau of Investigation on two occasions and I am aware of an ongoing investigation being performed by the Rhode Island State Police Financial Crimes Unit. The main person I am in contact with at the Rhode Island State Police is Detective Sergeant John LeMont. I gave a statement to the Rhode Island State Police with is included with my responses to Defendants' Request for Documents.

Signed under the pains and penalties of perjury this day of April, 2006.

PATRICIA BERGEN' NE

As to Objections,

GT or        Aceto, Esq.
  (BBOtt 558556)
Erin J. Brennan, Esq.
  (BBO#660097)
JOHNSON & ACETO, LIP
67 Batterymarch St., Suite 400
Boston, MA 02110
(617) 728-0888

# THE MCCORMACK FIRM, LLC

Attorneys at Law

ONE INTERNATIONAL PLACE - T$^{H}$ FLOOR
BOSTON, MASSACHUSETTS 02110

Phone 617.951.2929
Fax    617.951.2672

Michael J. McCormack
Mark E. Cohen
Joseph H. Aronson
Brian C. Duffey
Amy M. Soisson
Marc L. LaCasse
Stephen D. Rosenberg
David T. Mitrou

Robert J. Maselek, Jr.
Eric L. Brodie
Donna E. Hess
Sylvia Chu
Gerald S. Frim
Laura G. Ryan
Erica L. Silverman
Jon Hlalaby

Caroline M. Fiore
Susan N. Granoff
Of Counsel

Sender's E-Mail:
lryan@mccormackfirm.com

April 11, 2006

**Via Facsimile** & **U.S. Mail**
Erin J. Brennan, Esq.
Johnson & Aceto, PC
67 Batterymarch Street
Boston, MA 02210

    **Re: Patricia Bergevine v. Pease** & **Curren, Inc., et al**
      **United States District Court, C.A. #05-11395-RLL**
      **Our File No.: 7997**

Dear Ms. Brennan:

    We write in regard to the above-referenced matter. We ask that you supplement your client's answers to several of defendants' Interrogatories. Specifically, we request that you supplement Ms. Bergevine's answers to Interrogatories Nos. 5, 10, 12, 16, 24, and 25. The interrogatories and answers are set forth below.

INTERROGATORY NO. 5:

Please set forth all facts upon which you base your claim defendants "invested some part of the fraudulently derived income into the business in which they are currently engaged i.e., the business of refining metals, and into other enterprises."

*ANSWER NO. 5:*

*Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to this interrogatory on the grounds that it seeks information which is more readily available to the Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint.*

    This answer is non-responsive and does not identify any facts upon which plaintiff bases her claim that defendants "invested some part of the fraudulently derived income into the business in which they are currently engaged i.e., the business of refining metals, and into other enterprises" and instead refers back to the complaint. The complaint, however, contains no facts that support this claim. Please supplement your response to either provide defendants with the facts that allegedly support this claim or an admission that no such facts exist.

INTERROGATORY NO. 10:
Please set forth all facts upon which you base your claim as set forth in your complaint that you "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior."

THE MCCORMACK FIRM, LLC

Erin J. Brennan, Esq.
April 11, 2006
Page 2

*ANSWER NO. 10:*
*Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a*
*legal conclusion which is not within the reasonable knowledge of the Plaintiff Subject to and*
*without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's*
*Complaint.*

This answer is non-responsive and does not set forth any facts upon which plaintiff bases her claim that she "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior" and instead refers back to the complaint. However, the complaint contains only the same conclusory allegation with no facts to support the allegation. Please supplement this response to set forth the facts upon which plaintiff basis the claim or admit that no such facts exist.

INTERROGATORY NO. 12:
If you received medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your complaint, please state:

a. the name and address of any and all persons, hospitals, counselors, social workers, or other providers from which you received medical or other treatment;

b. a full and complete description of all treatments, medication and tests that you received, including the dates of each, and the person or facility by whom/which each was administered; and

c. an itemized account of all expenses incurred for the treatment referred to above.

*ANSWER NO. 12:*
*I saw a psychiatrist named Cynthia Brown in North Attleboro, MA for approximately*
*seven (7) to eight (8) visits. She prescribed me two (2) or three (3) different medications for the*
*symptoms described in my Complaint, but when they did not work, I discontinued the*
*medications and stopped seeing Dr. Brown.*

This answer is non-responsive and does not identify a description of the treatment received from the psychiatrist, the dates of treatment, the medications prescribed, or the expenses incurred in connection with the treatment. Please supplement this response to provide this information.

INTERROGATORY NO. 16:
Please set forth all facts upon which you base your claim that you are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. § 1964 (c).

*ANSWER NO. 16:*
*Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,*
*ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not*
*required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without*
*waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my*
*Complaint.*

We disagree with plaintiff's objections and believe they are unfounded. Defendants seek the basis for plaintiff's claimed entitlement to treble damages and attorney's fees pursuant to 18 U.S.C. § 1964 (c). Plaintiff refers defendants to the allegations in her complaint, however, there are

THE MCCORMACK FIRM, tic

Erin J. Brennan, Esq.
April 11, 2006
Page 3

no allegations that set forth a basis for entitlement to treble damages and attorney's fees pursuant of 18 U.S.C. §1964 (c), only a conclusory statement that plaintiff is entitled to such remedies. We ask that plaintiff supplement her response to this interrogatory with facts to support the basis for her claimed entitlement to these remedies.

INTERROGATORY NO. 24:
Please set forth in itemized form you annual earnings from the date you left Pease & Curren to the present, giving the year (or partial year if less) the names and address of your employers, or contractors, and the amount received from each.

*ANSWER NO. 24:*
*Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without waiving the foregoing, the Plaintiff states as follows: In June, 2002 (six months into the calendar year), my earnings were approximately $53,000.00.*

This answer is non-responsive and fails to provide plaintiff's salary for the period from June, 2002 to the present and fails to identify the names and addresses of her employers or contractors, and the amount she received from each. Please supplement this response and answer the question fully.

INTERROGATORY NO. 25:
Please describe in complete and full detail any communications that you had with any government agency or police department (state or federal) regarding Pease & Curren, giving the date of such communications, the agencies and persons involved; the substance of such communications were in writing.

*ANSWER NO. 25:*
*I met with the Federal Bureau of Investigation on two occasions and I am aware of an ongoing investigation being performed by the Rhode Island State Police Financial Crimes Unit. The main person I am in contact with at the Rhode Island State Police is Detective Sergeant John LeMont. I gave a statement to the Rhode Island State Police with is included with my responses to Defendants' Request for Documents.*

This answer fails to describe in detail all communications plaintiff has had with any government agency or police department (state or federal) regarding Pease & Curren and fails to provide the dates and the substance of the communications. Please give the dates of plaintiff's meetings, the substance of the communications that occurred at the meetings and identify and describe in detail all other communications that took place between plaintiff and any government agency or police department (state or federal) regarding Pease & Curren. If plaintiff has only communicated on two occasions with the FBI as indicated in her answer to Interrogatory No. 25, please confirm the same.

THE MCCORMACK FIRM, LLc

Erin J. Brennan, Esq.
April 11, 2006
Page 4


        Please provide us with your supplemental responses at your earliest convenience. Thank
you.


                                        Very truly yours,


                                        Laura Ryan, Esq.

cc:     Bruce Gladstone, Esq.
        Cameron & Mittleman, LLP
        56 Exchange Terrace, Suite 2
        Providence, RI 02903-1766
83563.1