UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.   05-11395-RCL

PATRICIA BERGEVINE,
      Plaintiff,

v.

PEASE & CURREN, INC, PEASE & CURREN
MATERIALS, INC., FRANCIS H. CURREN, JR.,
ROBERT H. PEASE, JR., FRANCIS H. CURREN,
III A/K/A KIP CURREN AND MEREDITH A.
CURREN.
      Defendants.

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF TAX RETURNS
AND PLAINTIFF'S CROSS-MOTION TO COMPEL DEFENDANTS' TAX
RETURNS AND OTHER FINANCIAL RECORDS**

---

**INTRODUCTION**

The Defendants are *again* attempting to use the Court's jurisdiction as both a sword and a shield - this time, by requesting tax returns in a matter where the Plaintiff's income, outside of her employment with the Defendants, is entirely irrelevant and not at issue, while simultaneously refusing to produce tax documents and financial records which are wholly relevant to Plaintiff's claims against the Defendants.  The Defendants have already been ordered by this Court (Lindsay, J.) to participate in discovery after attempting to move for a protective order to avoid same while simultaneously requesting discovery from the Plaintiff.  The Defendants have provided documents which are non-responsive, have incinerated or deleted relevant documents and files both before and after receiving notice of the litigation and Plaintiff's Document Requests, and have refused to supplement their Responses to Plaintiff's Requests, all in violation

of this Court's Order. Attempting to distract the Court now, by filing this Motion (and several others) and suggesting that the Plaintiff's tax returns are in any way relevant, when in fact it is the Defendants' own tax documents and financial records which are relevant and which they are seeking to avoid producing, is a frivolous waste of all of the Parties' - and the Court's - time and money.

In light of the circumstances, the Defendants' Motion for to Compel Production of Plaintiff's Tax Returns should be denied and the Plaintiff's Cross-Motion to Compel Defendants' Production of Tax Returns and Other Financial Records should be granted.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On or about July 1, 2005, Plaintiff filed suit against the Defendants Pease & Curren, Inc., Pease & Curren Materials, Inc., Francis H. Curren, Jr., Robert H. Pease, Jr., Francis H. Curren, III a/k/a Kip Curren and Meredith Curren (the "Defendants") for breach of contract, fraud, violations of the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1962(a) and 1962 (c), negligent infliction of emotional distress[1] and intentional infliction of emotional distress as a result of Defendants' fraudulent conduct and business practices. *See* Paragraph 3 of the Second Affidavit of Erin J. Brennan, Esq. (the "2nd Brennan Aff."), filed contemporaneously herewith.

On or about April 25, 2006, the Defendants filed a Motion for a Protective Order to Defer Depositions and Answers to Interrogatories for Six Months. 2nd Brennan Aff., ¶4. Plaintiff opposed same on May 1, 2006 and filed a Cross-Motion to Compel the Defendants to Participate in Discovery and for Sanctions. 2nd Brennan Aff., ¶5. On May 24, 2006, the Court (Lindsay, J.)

---

[1] The Parties have filed a Stipulation of Dismissal as to Plaintiff's Counts for Negligent and Intentional Infliction of Emotional Distress.

2

denied the Defendants' Motion for a Protective Order and granted Plaintiff's Cross-Motion (the "May 24, 2006 Order"). 2nd Brennan Aff., ¶6.

On June 29, 2006, Meredith Curren appeared for her deposition and on July 25, 2006, Francis H. Curren, III appeared for his deposition. 2nd Brennan Aff., ¶7. During their depositions, both Meredith Curren and Francis H. Curren, III refused to answer any questions relating to their personal financial and tax information as it relates to the companies Pease & Curren, Inc. and Pease & Curren Materials, Inc. 2nd Brennan Aff., ¶8. During his deposition, Francis H. Curren, III stated that the gross revenue figures for Pease & Curren, Inc. for 2005 were Thirty-Five Million Dollars ($35,000,000.00). 2nd Brennan Aff., ¶9. When asked to describe his compensation structure with Pease & Curren, Inc., Defendants' Counsel instructed him not to answer, stating "[t]hat is confidential information. That has no relevance to this case, and I believe you're doing this the same way you asked Miss Curren about that information, in order to harass the witnesses". 2nd Brennan Aff., ¶10.

Despite refusing to, or being instructed not to, testify regarding their compensation structure with regard to Pease & Curren, Inc., the Defendants did testify in their depositions that the corporation Pease & Curren Materials, Inc. was only created to avoid the tax consequences of the conveyance of Pease & Curren, Inc. to the Defendants Meredith Curren, Francis H. Curren, III and Robert H. Pease. 2nd Brennan Aff., ¶11. Specifically, Pease & Curren Materials, Inc. was a holding company created for the purpose of allowing the Defendants Meredith Curren, Francis H. Curren, III and Robert H. Pease, Jr. to "purchase" the corporation Pease & Curren, Inc. from their fathers, Defendants Francis H. Curren, Jr. and Robert H. Pease, by "borrowing"

3

and/or "leasing", and eventually purchasing, precious metals from the new corporation Pease & Curren Materials, Inc. for the use of Pease & Curren, Inc.  2nd Brennan Aff., ¶12.

The Defendants have refused to provide any relevant financial or tax documents to the Plaintiff pursuant to Plaintiff's Request for Production of Documents[2].  2nd Brennan Aff., ¶13. In their Answers to Interrogatories, the Defendants answered the following request:  "Please describe in detail the financial profile of the [Defendant Corporations], including, but not limited to, the corporate structure of the Defendants, including all officers, stock transfers, asset conveyances and conversions since the Defendants were first incorporated and the Defendant Corporations gross year-end revenue for each year from 1996 through the present" as follows: "Defendants object to the interrogatory on the grounds that it is overly broad, unduly burdensome, not relevant or calculated to lead to the discovery of admissible evidence".  2nd Brennan Aff., ¶14.

During the deposition of the Defendant Francis H. Curren, III, counsel for the Plaintiff inquired as to the location of certain requested documents and was informed that the documents had been incinerated, discarded or deleted.  2nd Brennan Aff., ¶15. Following the deposition, counsel for the Plaintiff requested the following documents, all of which were previously requested in Plaintiff's Requests for Production of Documents and in the Schedule A's attached to the Defendants' deposition notices, from counsel for the Defendants:  i) copies from the

---

[2] In their Responses to Plaintiff's Request for Production of Documents, the Defendants responded to the following request:  "All bookkeeping records of the Defendants for the entire fiscal years of 1996 through 2005, including, but not limited to, payroll records, tax statements, individual tax returns and distributions to the officers of [Pease & Curren, Inc.] and [Pease & Curren Materials, Inc.]" as follows:  "Defendants object to this request on the ground that it is overly broad, unduly burdensome, designed to harass the defendants and seeks information that is confidential, proprietary, and not relevant to this dispute nor is it calculated to lead to the discovery of admissible evidence.  Subject to and without waiving said objections, defendants respond as follows:  Defendants have produced State of Rhode Island Profit Corporation Annual Report for Pease & Curren, Inc. and Pease & Curren Materials, Inc. for the years 2001-2004.  See, Exhibit A."

"tracking" system (electronic or paper); ii) copies of settlement reports (electronic or paper); iii) client account documents (electronic); iv) ledger cards; v) assay tickets; vi) correspondence with clients; vii) call logs for dental customers; viii) tax documents and financial records from 1996 to present; ix) personnel files for the Plaintiff and an employee named Bethany Warburton; x) copies of complaints allegedly made against the Plaintiff; and xi) contact and availability information for the Defendant Robert H. Pease, Jr. 2nd Brennan Aff., ¶16. Defendants' Counsel stated that the Defendants would not produce the requested financial or tax documents and both Defendants' Counsel and the Defendant Meredith Curren indicated that the majority of the other documents requested had either been incinerated or deleted from their computers. 2nd Brennan Aff., ¶17.

At that time, counsel for the Defendants also requested copies of the Plaintiff's tax returns. 2nd Brennan Aff., ¶18. Upon questioning by Plaintiff's counsel as to the relevance of same, counsel for the Defendants responded "her credibility". 2nd Brennan Aff., ¶19. Plaintiff's counsel stated that Plaintiff would produce her 1099 tax forms from her work with the Defendants, but that she would not produce her State and federal tax returns both because the tax returns are not relevant and because they are privileged. 2nd Brennan Aff., ¶20. Thereafter, in a telephone conference on September 20, 2006, Defendants' counsel again requested Plaintiff's tax returns. 2nd Brennan Aff., ¶21. Counsel for the Plaintiff refused and again offered to produce copies of the Plaintiff's 1099's from her contract work with the Defendants. 2nd Brennan Aff., ¶22.

## LEGAL ARGUMENT

I.     **Discovery and the Confidential and/or Privileged State and Federal Tax Returns.**

    A.     <u>**Under Massachusetts and federal law, all information which is relevant to a claim or defense of any party in the case, and which is not privileged, is discoverable.**</u>

Massachusetts and federal laws embody policies which favor liberal discovery. "The Supreme Judicial Court has stated that 'absent compelling reasons to the contrary', the definition of relevancy set forth in *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947) controls." *Cadrin v. Trans Spec Truck Service*, 2003 WL 22903858, *2 (Mass. Super. 2003). Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, pretrial discovery "broadly encompasses any matter related to or that could reasonably lead to a matter that is related to any issue that is or may be in the case". *See Cadrin, supra,* 2003 WL 22903858 at *2 *citing Hickman, supra,* 329 U.S. at 501.

    B.     <u>**Federal and state tax returns are only discoverable so long as they are relevant to the subject matter of the action and the party seeking same cannot obtain the information from an alternate source**</u>.

Under Massachusetts law, "there is a privilege ... that bars a public employee from disclosing information set forth in a Massachusetts tax return or in an accompanying document". *Cadrin, supra,* 2003 WL 22903858 at *2. "The present version of the statute and its predecessor 'embody the policy of the Commonwealth to preserve the confidentiality of State tax returns'." *Id. citing Finance Commission of Boston v. Commissioner of Revenue*, 383 Mass. 63, 71, 417 N.E.2d 945 (1981). "The privilege cannot be circumvented by simply demanding the information from the taxpayer." *Cadrin, supra,* 2003 WL 22903858 at *2 *citing James Millar Co. v. Commonwealth*, 251 Mass. 457, 464, 146 N.E. 677 (1925).

Although there is no comparable privilege barring access to federal tax returns, "courts have fashioned discovery rules that treat federal tax returns as enjoying a qualified right to confidentiality and that require a showing beyond mere relevance to overcome this qualified right". *Cadrin, supra*, 2003 WL 22903858 at *3. In *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 119 F.R.D. 625 (E.D.N.Y. 1988), the court established "a two prong requirement for disclosure of tax returns; first, a showing of relevance, and second, a showing that the information cannot be obtained from any other source". *Cadrin, supra*, 2003 WL 22903858 at *3. "The burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information". *Pedraza v. Holiday Housewares, Inc.*, 203 F.R.D. 40, 43 (D. Mass. 2001) *citing Bonanno Organized Crime Family of La Cosa Nostra, supra,* 119 F.R.D. at 627. "The District of Massachusetts approaches requests for disclosure of income tax returns in the same spirit." *Pedraza, supra*, 203 F.R.D. at 43. *See Buntzman v. Springfield Redevelopment Authority*, 146 F.R.D. 30, 32 (D. Mass. 1993) *citing Pogharian v. Croce*, C.A. 81-1307-F (D. Mass. 1985) ("[w]here a party has put in issue the amount of [his] income, that party's tax returns or reasonable substitutes are discoverable").

II.  **The Court should deny the Defendants' Motion, because the Plaintiff has not put her income at issue in this action, the Defendants have failed to establish relevance and the information sought is confidential and privileged.**

    A.    <u>**The Plaintiff has not put her income at issue in this matter.**</u>

The only financial question at issue in the Plaintiff's Complaint relates to Defendants' payment, or failure to pay, commissions to the Plaintiff - information which is readily available to the Defendants. The Defendants argue that "because the Plaintiff claims lost commissions and

earnings in her complaint, she has put her income at issue". This inference is false. The Plaintiff is not seeking damages related to lost earnings or loss of earning capacity. She is seeking payment of commissions which she did not receive, and to which she would be entitled, if not for the Defendants' fraud.

In *Pogherian*, the court determined that where a party has put in issue the amount of his or her income, that party's tax returns or reasonable substitutes are discoverable. *Id. See Buntzman, supra,* 146 F.R.D. at 32. In the *Buntzman* matter, the court held that "the plaintiff's financial condition was relevant to the subject matter of the litigation" because "the central dispute underlying the lawsuit is plaintiff's contention that he was able ... to develop the property ... and the defendants' response that [the plaintiff] was either unwilling or unable, for financial or other reasons, to do so". *Id.* at 32-33. The *Buntzman* court ruled that the plaintiff must produce his tax returns to the defendants.

Unlike *Buntzman*, where the defendants' defense to the plaintiff's claims **relied** upon the plaintiff's financial position, in the instant matter, the Defendants have not established, or even alleged, any circumstances similar to those discussed above. Here, the Plaintiff has alleged that the Defendants did not pay her the commissions that they owed her as a result of the Defendants' falsification of documents. The Plaintiff, who was an independent contractor working with Pease & Curren, Inc. during the majority of the years of tax returns requested, received 1099 tax forms *from the Defendants* which summarize the amounts of commissions and salary actually paid to the Plaintiff. Whether the commissions were reduced as a result of fraudulent conduct, or how much the Plaintiff is owed, cannot be derived from the Plaintiff's tax returns. In fact, the primary documents which would shed light on the amount of commissions the Plaintiff is owed

are documents in the Defendants' possession.

Accordingly, the Plaintiff's income is not at issue in this matter and as such, the Defendants should not be entitled to copies of the Plaintiff's State and federal tax.

### B. The information sought is not reasonably limited in time, is not relevant and further, is obtainable from other sources.

The Defendants argue that they have "modified" their request to seek only returns including W-2's, for the period 1996 to 2002 and that this "four year period" is more than reasonable in time. The time period is actually **seven** years and, as stated previously, the documents are either privileged or confidential and are not relevant.

The Defendants also argue that because the Plaintiff "claims that she was earning an average of $100,000 per year her last few years **at Pease & Curren"** [emph. added] and claims "$150,000 in lost earnings for the years 1996 to 2002 as a result of defendants' alleged misconduct", the requested information [i.e., Plaintiff's tax returns] is "highly relevant". This allegation of relevance is false and the Defendants have failed to allege, let alone provide evidence in support of, any valid reasons for the production of Plaintiff's tax returns.

As previously stated, "[t]he burden to show relevancy lies on the party seeking the returns; the party resisting disclosure bears the burden of establishing alternative sources for the information". *Pedraza, supra,* 203 F.R.D. at 43 (D. Mass. 2001) *citing Bonanno Organized Crime Family of La Cosa Nostra, supra,* 119 F.R.D. at 627. "[C]ourts have fashioned discovery rules that treat federal tax returns as enjoying a qualified right to confidentiality and that require a showing beyond mere relevance to overcome this qualified right". *Cadrin, supra,* 2003 WL 22903858 at *3.

In the *Cadrin* matter, the defendants were sued for negligent failure to warn which

9

resulted in the death of the plaintiff. *Id.* at *1. The plaintiff sought the defendants' tax returns because the defendants had "muddled the issue of who was in control of the property". *Cadrin, supra*, 2003 WL 22903858 at *2. The *Cadrin* court ruled, in 2003, that the defendants were not required to produce their state tax returns - because of privilege - or their federal tax returns where the plaintiff failed to demonstrate that access to the federal tax returns was likely to produce evidence that was highly material to the case and that it could not be obtained elsewhere. In 2004, on a Motion for Reconsideration, the *Cadrin 2* court subsequently ruled that access to the federal tax returns for one year for one of the individual defendants was "highly material to the case" and that the information could not be "obtained elsewhere". *Cadrin v. Trans Spec Truck Service, Inc.*, 2004 WL 1427167, *1.

Unlike *Cadrin 2*, where the plaintiff established that defendant must produce his federal tax return for one year, because the information was highly material and unobtainable from another source, the tax documents requested in this matter are not relevant to any defense of the Defendants - or any claim of the Plaintiff's - and the Defendants have failed to provide any indication otherwise. Further, the amount of the Plaintiff's income from Pease & Curren, Inc. is information which is readily available to the Defendants, because the Defendants **paid** - or failed to pay - the income to the Plaintiff. All of the requested income information relating to the Plaintiff's work with the Defendants is in the possession of the Defendants.

In fact, the Defendants even go so far as to state that "[t]he defendants do not have plaintiff's settlement reports for most of these years". However, the Defendants created the settlement reports in their own computer system and conveniently fail to mention that they do not have them because they have incinerated or deleted them - as recently as a few months ago.

Destroying documents, long after the commencement of the litigation, and then requesting privileged and confidential information from the Plaintiff and alleging relevance and necessity, is an arrogant and cyclical use of the discovery process.

Finally, the Defendants state that they seek Plaintiff's tax returns in order to address an issue with respect to Plaintiff's "credibility". However, the Defendants not only fail to provide any legal basis for the production of tax returns for credibility, but also fail to allege any factual support for same.

The information contained in the Plaintiff's tax returns is not material to either the Plaintiff's claims or the Defendants' defenses and therefore, the information is not relevant. Further, the information which the Defendants appear to seek (i.e., the Plaintiff's 1099 forms and commission documents) is actually in the possession of the Defendants and the Defendants' Motion should be denied.

**II.    The Plaintiff's Cross-Motion to Compel Tax Returns and Other Financial Documents should be allowed because the Plaintiff has a claim for RICO, the Defendants' income is at issue in Plaintiff's Complaint, and several facts have surfaced which indicate that the Defendants' tax returns and financial documents are highly relevant to Plaintiff's claims.**

Plaintiff seeks the production of the Defendants' tax returns and other financial records because the Plaintiff has alleged that the Defendants have used fraudulently-derived income to fund another business as well as to pay themselves dividends. The Plaintiff has alleged that Defendants systematically lowered the amounts of precious metals recovered from lots or jobs, on which the Plaintiff was paid commissions, and that Defendants took the difference and either benefited individually or transferred some of the funds into another business entity - Pease & Curren Materials, Inc. These allegations are the root of the Plaintiff's RICO claims against the

Defendants. The Defendants' tax returns and financial documents are highly relevant to the issue of how much money was generated, transferred and received by the various Defendants, because the tax returns and financial documents will assist in establishing a pattern of racketeering.

In *Halperin v. Berlandi*, 114 F.R.D. 8 (D. Mass. 1986), the plaintiffs sought copies of the defendants' tax returns in order to establish a pattern of racketeering for the purposes of proving the RICO claim in their Complaint. The defendants moved for a protective order, stating that eight years of federal and state tax returns was too intrusive a request and that the information sought was available elsewhere. The *Halperin* court ruled that the tax returns were clearly relevant to establish a pattern of racketeering and ordered the defendants to produce same. *Id.*

Ironically, the Defendants cite to the *Halperin* case in their Motion to obtain *Plaintiff's* Tax Returns, but it is the Plaintiff who seeks the Defendants tax returns for the very same reasons that plaintiffs in *Halperin* sought them - to establish a pattern of racketeering.

In the instant matter, during their depositions, the Defendants Meredith Curren and Francis H. Curren, III refused to answer any questions relating to their personal financial and tax information as it relates to the companies Pease & Curren, Inc. and Pease & Curren Materials, Inc. When asked to describe his compensation structure with Pease & Curren, Inc., Defendants' Counsel instructed him not to answer, stating "[t]hat is confidential information. That has no relevance to this case, and I believe you're doing this the same way you asked Miss Curren about that information, in order to harass the witnesses". However, the Defendants did testify in their depositions that the corporation Pease & Curren Materials, Inc. was only created to avoid the tax consequences of the conveyance of Pease & Curren, Inc. to the Defendants Meredith Curren,

Francis H. Curren, III and Robert H. Pease.  Specifically, Pease & Curren Materials, Inc. was a holding company created for the purpose of allowing the Defendants Meredith Curren, Francis H. Curren, III and Robert H. Pease, Jr. to "purchase" the corporation Pease & Curren, Inc. from their fathers, Defendants Francis H. Curren, Jr. and Robert H. Pease, by "borrowing" and/or "leasing", and eventually purchasing, precious metals from the new corporation Pease & Curren Materials, Inc. for the use of Pease & Curren, Inc.

Based on the foregoing, when combined with the allegations in Plaintiff's Complaint, there is sufficient evidence to indicate that the Defendants' tax returns and financial documents are highly relevant to the Plaintiff's claims.  The tax returns and financial documents are material to the Plaintiff's Complaint and are unobtainable from any sources other than the Defendants.  As such, the Defendants should be ordered to produce their tax returns and other financial documents.

**WHEREFORE**, the Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion to Compel Production of Tax Returns and allow Plaintiff's Cross-Motion to Compel Defendants' Production of Tax Returns and Other Financial Records.

>Respectfully submitted,
>PATRICIA BERGEVINE,
>By her attorneys,
>
>/s/ Gregory J. Aceto___
>Gregory J. Aceto, Esq.
> BBO No. 558556
>Erin J. Brennan, Esq.
> BBO No. 660097
>Johnson & Aceto, LLP
>67 Batterymarch Street, Suite 400
>Boston, MA 02110
>(617) 728-0888

**Certificate of Service**

       I hereby certify that on October 4, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter via e-mail. I further certify that copies will be sent via U.S. Mail to all counsel in the matter who are not registered with the CM/ECF system.

/s/ Gregory J. Aceto
Gregory J. Aceto, Esq.
Johnson & Aceto, LLP
67 Batterymarch Street, Suite 400
Boston, MA 02110
Telephone: (617) 728-0888
Facsimile: (617) 338-1923
Email: aceto@johnsonaceto.com

Attorney for Plaintiff Patricia Bergevine