UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action
No. 05 11395 RCL

PATRICIA BERGEVINE,
      Plaintiff

v.

PEASE & CURREN, INC., PEASE &
CURREN MATERIALS, INC., ROBERT H.
PEASE, FRANCIS H. CURREN, JR.,
FRANCIS H. CURREN, III A/K/A KIP
CURREN, AND MEREDITH CURREN
      Defendants

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DEFENDANTS' TAX RETURNS AND OTHER FINANCIAL RECORDS

The defendants Pease & Curren, Inc., Pease & Curren Materials, Inc., Robert H. Pease, Francis H. Curren, Jr., Francis H. Curren, III, a/k/a Kip Curren, and Meredith Curran, ("defendants") hereby oppose Plaintiff's Motion to Compel Production of Defendants' Tax Returns and Other Financial Records.

Plaintiff seeks the production of defendants' tax returns and other unspecified "financial documents" arguing that these records are relevant to her RICO claim. Plaintiff's RICO claim, however, is baseless, consisting of nothing more than generic, conclusory allegations of RICO violations, and lacking the necessary elements of a RICO claim. Thus, plaintiff's claim that she needs the documents to support her deficient RICO claim is nothing more than a fishing expedition, in the hopes that some shred of evidence might turn up to support the baseless claim. Accordingly, plaintiff's motion to compel should be denied.

2

# I.  BACKGROUND

## A.  Plaintiff's Underlying Claims

Plaintiff worked at Pease & Curren from 1996 to 2002, in the capacity of dental account representative for Pease & Curren. Complaint, p. 3, ¶ 10. Her primary responsibility was to solicit business from dental laboratories and clients who would submit their metal scraps to Pease & Curren for refining. Id. , 1 17. Plaintiff claims that while working for Pease & Curren, she received a base pay plus commissions on her sales to the dental laboratories and other clients based in part upon the weight of the metal resulting after the refining process. Id. , at p. 4, IN 19, 20 & 21.

Plaintiff alleges that defendants were systematically lowering the reported weights and amounts of the precious metals contained in the dental scraps, and that the lower weight was used to calculate the amount due to the customer and to the plaintiff for her commissions. Id. Plaintiff alleges that defendants falsely under-calculated the weights and percentage of metals recovered on the accounts that she worked in order to defraud her, defendants' clients and defendants' employees. Id. , ITT 32 & 33. The plaintiff alleges that as a result of defendants' misconduct, she lost commissions on her sales. Id.

Plaintiff filed suit against defendants on or about July 17, 2005. Plaintiff's complaint contains causes of action for breach of the employment contract, fraud, negligence, negligent misrepresentation, negligent infliction of emotional distress,' intentional infliction of emotional distress and violation of RICO.

Defendants deny plaintiff's allegations. Plaintiff's claims are based on a complete lack of understanding of the tracking system and assay process and misinformation regarding the mechanics of metal scrap refining and the agreed upon methodology for determining compensation to the plaintiff and the customer.

---

[i] Plaintiff has since voluntarily dismissed with prejudice her causes of action for negligent and intentional infliction of emotional distress and all claimed damages for emotional distress.

3

### B.    The RICO Claim

Plaintiff claims that "defendants violated the RICO Act 18 U.S.C. sections 1962 *et seq.* Plaintiff claims " but does not identify the subsection of the statute that she is bringing her claim under. Instead, she vaguely alleges that he defendants are engaged in an enterprise which affects Interstate Commerce" and alleges that the defendants systematically defrauded the plaintiff and defendants' clients by misrepresenting the amounts of metals refined on the lots received. She claims that by preparing false reports, defendants derived income from the additional metals refined, and also by paying lower commissions to the plaintiff upon the numbers reported in the falsified records. Plaintiff alleges that the defendants are each a "person" under 18 U.S.C. §§ 1962, *et seq.,* and that Defendants used or invested, directly or indirectly, part of that income or the proceeds of that income, to continue the operation of the enterprise in which they are engaged." Complaint, pg. 9, IIi 64, 65. She claims she "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior."

In response to these conclusory allegations and the sparse facts alleged to support the RICO claim, defendants propounded interrogatories seeking all facts that support plaintiff's RICO claim. Plaintiff, however, provided no additional facts in her answers to interrogatories and instead, referred the defendants back to the allegations contained in plaintiff's complaint. See, Plaintiff's Answers to Defendants Interrogatories, Answers Nos. 5, 10 & 16, Attached as Exhibit 1 to Affidavit of Laura Ryan. In response to defendants' request that plaintiff supplement her answers to these (and other) interrogatories, plaintiff prepared Supplemental Answers to Interrogatories. See, Plaintiff's Supplement Interrogatory Answers, attached as Exhibit 2 to Affidavit of Laura Ryan. However, the supplemental answers to interrogatories seeking facts supporting plaintiff's RICO claim, simply direct defendants to the deposition transcripts of Meredith Curren and Kip Curren in general, with no references to specific testimony.

### C.    Plaintiff's Motion to Compel

Plaintiff seeks the production of defendants' tax returns and "other financial records"

4

arguing that they are relevant to plaintiff's allegations that the defendants "used fraudulently-derived business income to fund other businesses as well as to pay themselves dividends" which she contends "are the roots of Plaintiff's RICO claim against the Defendants." She contends that defendants' tax returns and unspecified financial documents are "relevant to the issue of how much money was generated, transferred and received by the various defendants because such documents will assist in establishing a pattern of racketeering."

II.    **ARGUMENT**

    A.    **Plaintiff's Claim that She Is Entitled to Defendants' Tax Returns and Other Financial Documents to Support Her RICO Claim Is Nothing More than a Fishing Expedition Given that the RICO Claim is Baseless and Was Brought In Bad Faith**

Plaintiff's RICO claim is based on vague and conclusory allegations that mimic the statute, but fail to state a viable RICO claim. In an apparent effort to avoid having to allege each of the necessary elements, plaintiff even goes so far as to fails to identify the subsection of the statute that she is bringing her claim under, let alone support the claims with any facts or evidence. "It is not enough for plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of the [essential RICO elements] to the time of trial." Feinstein v. Resolution Trust Corporation, 942 F.2d 34, 42 (1 st Cir. 1991); New England Data Services, Inc. v. Becher, 829 F.2d 286, 290 (18t Cir. 1987) (conclusory allegations of mail and wire fraud with no description of any time, place or content of the communication did not satisfy pleader's burden).

Plaintiff's attempt to discover information which is normally protected by the federal courts as confidential, in order to find evidence to support her baseless RICO claim, is improper. When plaintiff filed her complaint, she knew of no facts that would suggest a "pattern of racketeering," as evidenced by the absence of any specific allegations in her complaint, her answers to interrogatories and her supplemental answers to interrogatories. See, Affidavit of Laura Ryan, Exhibit 3. Plaintiff wrongly asserted a claim under RICO, despite the absence of any facts to support such a claim, and now seeks to compel the production of tax returns and "other financial

documents" in the hopes that she *might* find anything, to support that theory. Because plaintiff's motion improperly seeks private information to support a baseless claim, the motion should be denied.

**B.    The Requested Relief Is Overly Broad**

Plaintiff seeks the tax returns of both the corporate and individual defendants, for unspecified years, and "other [unidentified] financial records." Plaintiff's requested relief is overly broad. In the event the court orders any of the requested relief, such relief should be limited to only that information that is relevant while respecting the privacy interests of the defendants.

The tax returns of Pease & Curren and Pease & Curren Materials are the only tax returns even arguably relevant to the plaintiff's claims. While the contention that the tax returns of the corporate entities are relevant to show whether there was a transfer of funds between the corporations is plausible, plaintiffs have failed to explain how the salaries and/or benefits earned by Meredith Curren, Kip Curren, Robert Pease and Francis H. Curren, Jr., would be relevant. Instead, the individuals' tax returns appear to have been requested for the purpose of harassing the defendants. Furthermore, the privacy interest of the individual defendants warrants greater protection than that afforded to the corporations. See United States v. Morton Salt, 338 U.S. 632, 652, n.2 (1950) (individual privacy interests greater than corporations'). Accordingly, any discovery of defendants' tax returns should be limited to the tax returns of the corporate entities, Pease & Curren, Inc. and Pease & Curren Materials, Inc.

Further, in the event the court requires defendants to produce any of the requested information, the court should limit the order to produce only those tax returns for those years that plaintiff worked for Pease & Curren (1996-2002). Tax returns for any additional years would be irrelevant to plaintiff's claims.

Additionally, the request for the "other [unidentified] financial records" should be denied. The potential for abuse would be significant should plaintiff's be permitted to discover any of

6

defendants' financial records. At a minimum, defendants obligation to produce such documents should be limited to specifically identified documents.

> **C.**  **To the Extent Plaintiff Is Permitted to Discover Any of the Requested Information, Such Information Should Be Produced Subject to a Protective Order**

In the event the court grants plaintiff's motion, in whole or in part, defendants request that any information they are required to produce, be done so only under protective order, designed to protect defendants' private financial information.

**Defendants,**
By their Attorneys,

Joseph H. Aronson [BBO 22070]
Laura G. Ryan [BBO #653793]
THE McCORMACK FIRM, LLC
One International Place
Boston, MA 02110
(617) 951-2929

90193.1

7

## **CERTIFICATE OF SERVICE**

I, Laura G. Ryan, hereby certify that on October 18, 2006, the foregoing document, Defendants' Opposition to Plaintiff's Motion to Compel Production of Defendants' Tax Returns and Other Financial Records, which is being filed through the ECF system, was served electronically to the following recipient identified as a registered participant on the Notice of Electronic Filing (NEF):

> *Erin Brennan, Esq.*
> *Gregory Aceto, Esq.*
> *Johnson & Aceto, PC*
> *67 Batterymarch Street*
> *Boston, MA 02210*

In addition, a copy of the foregoing Defendants' opposition to Plaintiff's Motion to Compel Production of Defendants' Tax Returns and Other Financial Records was served via first class mail on October 18, 2006 upon the following attorney of record, who has not been identified as an ECF recipient:

> *Bruce Gladstone, Esq.*
> *Cameron & Mittleman, LLP*
> *56 Exchange Terrace, Suite 2*
> *Providence, RI 02903-1766*

> /s/ Laura G. Ryan
> Laura G. Ryan

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11395 RCL

PATRICIA BERGEVINE,
               Plaintiff,

v.

PEASE & CURREN, INC.,
PEASE & CURREN MATERIALS, INC.,
ROBERT H. PEASE, JR., FRANCIS H.
CURREN, JR., FRANCIS H. CURREN III
A/K/A KIP CURREN, AND MEREDITH
CURREN,
               Defendants.

**PLAINTIFF'S ANSWERS TO INTERROGATORIES PROPOUNDED BY THE
DEFENDANTS PEASE & CURREN, INC., PEASE & CURREN MATERIALS, INC.,
FRANCIS H. CURREN III A/K/A KIP CURREN AND MEREDITH CURREN**

_____

NOW COMES the Plaintiff Patricia Bergevine (the "Plaintiff"), and pursuant to Rule 33

of the Massachusetts Rules of Civil Procedure, hereby answers the Defendants Pease & Curren,

Inc., Pease & Curren Materials, Inc., Francis H. Curren, III A/K/A Kip Curren and Meridith

Curren (collectively, the "Defendants")' First Set of Interrogatories as follows:

**GENERAL OBJECTIONS**

A.    The Plaintiff objects to the Interrogatories insofar as they request information protected
by the attorney-client privilege or attorney-work product doctrine.

B.    The Plaintiff objects to the overly broad and unduly burdensome nature of the
interrogatories.

_____

   Two (2) additional defendants, Robert H. Pease, Jr. and Francis H. Curren, Jr., were omitted from the Defendants'
caption and are not listed on the Defendants' Interrogatories Propounded to Plaintiff.

## INTERROGATORIES

INTERROGATORY NO. 1:

Please identify yourself fully, giving your full name, date of birth, social security number, residential address, business address, occupation and name of your spouse, if married.

ANSWER NO. 1:

| | |
|---|---|
| Name: | Patricia A. Bergevine |
| DOB: | 9/18/1961 |
| Address: | 428 South Street, Plainville, MA |
| Bus. Address: | 26 Franklin Street, Wrentham, MA |
| Occupation: | Real Estate Sales |
| Spouse: | Dale Bergevine |

INTERROGATORY NO. 2:

Please set forth fully and in complete detail your employment history from June 2002 to the present, giving the names of all employers for whom you have worked, the nature of the work that you performed for each, your job title or position with each, the dates of your employment.

ANSWER NO. 2:

In June, 2002, I was employed by Pease & Curren as a sales representative. In July,

2002, I was unemployed. From August, 2002 through June, 2005, I worked as an independent

contractor for Advanced Chemical and from July, 2005 through the present, I have worked in

Real Estate Sales.

INTERROGATORY NO. 3:

Please set forth all facts, (including the names and addresses of all persons involved) upon which you base your claim that defendants "were systematically lowering the reported weights and percentages of metals recovered to defraud their clients, employees and plaintiffs."

ANSWER NO. 3:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Answering further, please see

the allegations contained in Plaintiff's Complaint, dated July 1, 2005 (the "Complaint").

Subject to and without waiving the foregoing, the Plaintiff states as follows: As stated in

my Complaint, throughout the course of my employment relationship with the Defendants, I

regularly received phone calls and letters from a number of my clients asking for the Defendants

to re-assay the lots, because the weights and corresponding reimbursements seemed low by their

previous numbers. The majority of the times that a lot was re-assayed, the Defendants would

claim that the original numbers were correct. In June, 2002, a colleague of mine inadvertently

discovered another database at the Defendants' offices in Warwick, RI containing files with

reports detailing different amounts for many of the lots. The colleague, Bethany Warburton,

informed me of the additional database and indicated to me that the reports in the database

contained the actual amount of each metal refined on each lot. Bethany Warburton and I began

comparing the files in the database to those reports that I received from the Defendants, and

based upon the comparison, discovered that the Defendants were systematically lowering the

reported weights and percentage of metals recovered to defraud their clients, employees and me.

INTERROGATORY NO. 4:

Please set forth all facts, (including the names and addresses of all persons involved)
upon which you base your claim that defendants defrauded you by failing to pay "commission in
the approximate amount of One Hundred Fifty Thousand Dollars ($150,000.00)."

ANSWER NO. 4:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint. Answering further, my commissions and bonuses were based on the amount of

metals recovered in each job or lot assayed. At times, I only received monetary bonuses if the

total assayed amounts were over a certain weight for the quarter. By fraudulently lowering the

weights reported to the clients and to me, the Defendants were able to pay the customers less for

the jobs or "lots" and fewer commissions to me. Further, if the amounts assayed were less than

the quarterly goals set for me, I also did not receive bonuses to which I was entitled.

INTERROGATORY NO. 5:

     Please set forth all facts upon which you base your claim defendants "invested some part
of the fraudulently derived income into the business in which they are currently engaged i.e., the
business of refining metals, and into other enterprises."

ANSWER. NO. 5:

     Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to

this interrogatory on the grounds that it seeks information which is more readily available to the

Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint.

INTERROGATORY NO. 6:

     Please set forth all facts upon which you base your claim that defendants breached your
employment agreement "by systematically defrauding [you resulting in your] being paid less
than the amount called for by the Contract."

ANSWER NO. 6:

     Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a

legal conclusion which is not within the reasonable knowledge of the Plaintiff. Subject to and

without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's

Complaint.

INTERROGATORY NO. 7:

Please set forth all facts upon which you base your claim defendants "materially misrepresented certain facts to [you] regarding the amounts of metals recovered, thereby causing [you] to base [your] invoices for payment upon falsified reports."

ANSWER NO. 7:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 8:

Please explain in detail your reason(s) for refusing to sign a confidentiality agreement while working for Pease & Curren.

ANSWER NO. 8:

I was never asked to sign a confidentiality agreement while working for Pease & Curren.

INTERROGATORY NO. 9:

Please set forth all facts upon which you base your claim that for the year 2002, your "annual compensation would have been One Hundred Thousand Dollars ($100,000)."

ANSWER NO. 9:

The amount is based on what I had been paid in salary and commissions as of June, 2002,

or six (6) months into the year. The amount does not account for what I would have received

had the amounts of the metals assayed been reported accurately. If I had received accurate

reports, my compensation for the year 2002 would have been higher than One Hundred

Thousand Dollars ($100,000.00).

5

INTERROGATORY NO. 10:

Please set forth all facts upon which you base your claim as set forth in your complaint that you "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior."

ANSWER NO. 10:

Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a

legal conclusion which is not within the reasonable knowledge of the Plaintiff Subject to and

without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's

Complaint.

INTERROGATORY NO. 11:

Please set forth in full and complete detail all damages (including expenses), losses or injuries suffered by you as a result of Pease & Curren's actions referred to in your complaint, giving the amounts of all alleged monetary damages, and a description of any emotional distress that you claim is attributable to those actions.

ANSWER NO. 11:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 12:

If you received medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your complaint, please state:

    a.    the name and address of any and all persons, hospitals, counselors, social workers, or other providers from which you received medical or other treatment;

b.    a full and complete description of all treatments, medication and tests that you received, including the dates of each, and the person or facility by whom/which each was administered; and

c.    an itemized account of all expenses incurred for the treatment referred to above.

ANSWER NO. 12:

I saw a psychiatrist named Cynthia Brown in North Attleboro, MA for approximately

seven (7) to eight (8) visits. She prescribed me two (2) or three (3) different medications for the

symptoms described in my Complaint, but when they did not work, I discontinued the

medications and stopped seeing Dr. Brown.

INTERROGATORY NO. 13:

Please identify by full name, residential address, name of employer, business address, relationship to you, if any, each person who witnesses and/or has knowledge of the occurrences alleged in your complaint, stating with respect to each such person the facts which he or she witnessed or of which he/she has knowledge.

ANSWER', NO.13:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to

this interrogatory on the grounds that it seeks information which is more readily available to the

Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint and

Plaintiff's Initial Disclosures, dated January 6, 2006 ("Initial Disclosures"). Subject to and

without waiving the foregoing, the following individuals are likely to have witnessed and/or have

knowledge of the occurrences alleged in my Complaint: Francis H. Curren, Jr., Robert H. Pease,

Jr., Francis H. Curren, III a/k/a Kip Curren, Meredith A. Curren and current and former

employees of Pease & Curren, Inc. and Pease & Curren Materials, Inc., including, but not limited

to, Mike Gullison, Jennifer Leger, Dr. Raj Mishra, Paul Dion, Dale Westberg, Harry Howland,

Keith Edwards, Kathi Silva, Sandra,Frappier, Brett Mastriano, Maryanne Borges, Debbie

DeBlois, Bethany Warburton, as well as Barbara McDonough and Detective Sergeant John

LeMont.

INTERROGATORY NO.14:

     Please identify by full name, residential address, name of employer, business address of each person whom you expect to call as an expert witness at trial, and state as to each such person:

     a.     all background information by which you intend to qualify was such person as an expert witness;

     b.     the subject matter on which each such expert is expected to testify;

     c.     the substance of the facts to which each such expert is expected to testify;

     d.     the substance of opinions to which each such expert is expected to testify; and

     e.     a summary of the grounds for each such opinion to which each such expert is expected to testify.

ANSWER NO. 14:

     The Plaintiff does not yet know whom she intends to call at trial as an expert witness.

The Plaintiff reserves the right to seasonably supplement this answer.

INTERROGATORY NO. 15:

     Please set forth all facts upon which you base your claim as set forth in your complaint the "Defendants negligently and carelessly maintained, supervised and operated the business practices of Pease & Curren."

ANSWER NO. 15:

     Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 16:

Please set forth all facts upon which you base your claim that you are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. § 1964 (c).

ANSWER NO. 16:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

INTERROGATORY NO. 17:

If you had or overheard any conversations with any agent or employee of Pease & Curren regarding the subject matter referred to in your complaint, please state the full names of all persons involved, the substance of each such conversation and the dates thereof.

ANSWER. NO. 17:

I discussed the discrepancies in the database with Bethany Warburton and, after I left the

employ of the Defendants, I discussed the discrepancies with Dr. Raj Mishra.

INTERROGATORY NO. 18:

Please set forth all facts upon which you base your claim that defendants' alleged "breach of their duty to conduct their business in accordance with state and federal laws has caused the Plaintiff to experience emotional distress and physical harm."

ANSWER NO. 18:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint and Answer No. 11.

INTERROGATORY NO. 19:

If you were treated by any psychiatrist, psychologist, counselor, social worker, or other
provider for any emotional or psychiatric issues from January 1, 1996 to the present (excluding
those identified in response to Interrogatory no. 12), please give the full name and address of the
provider, the dates of treatment, and the nature and reason for such treatment.

ANSWER NO. 19:

Other than the visits and psychiatrist identified in Answer No. 12, I was not treated by

any other provider for any emotional or psychiatric issues from January 1, 1996 to the present.

INTERROGATORY NO. 20:

Please set forth your gross annual earnings for the years 1997 to 2001.

ANSWER NO. 20:

1997: Approximately $28,000.00
1998: Approximately $34,000.00
1999: Approximately $41,000.00
2000: Approximately $49,000.00
2001: Approximately $54,000.00

INTERROGATORY NO. 21:

Please describe in full and complete detail the circumstances under which you obtained
employment with Advanced Chemicals, Co., stating the dates of all occasions you
communicated with Advanced Chemicals regarding working for Advanced Chemicals, with
whom you spoke and the content of the discussions.

ANSWER NO. 21:

I was contacted by Advanced Chemicals a few weeks after I stopped working for Pease

& Curren and I interviewed with John Venditti, the Sales Manager. We met to discuss the

procedure for how I would call on the dental industry clients and, after that meeting, I became an

independent contractor, working as a representative for Advanced Chemicals.

INTERROGATORY NO. 22:

Please set forth in full and complete detail:

a.    the process and all steps performed by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren.

b.    when you first acquired knowledge of the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren;

c.    give the names and address of any persons who provided this information to you;

d.    identify by full name the individual(s) who supervised or oversaw the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers during the time you were employed by Pease & Curren; and

e.    give the full names of all other employees who participated in the process and/or work to determine the weight and percentages of metals recovered.

ANSWER NO. 22:

a.    Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to this interrogatory on the grounds that it seeks information which is more readily available to the Defendants. Subject to and without waiving the foregoing, the Plaintiff states as follows: Generally, the dental labs would send their precious metal scrap to Pease & Curren and Pease & Curren would assay it and return back to the customer the value of their gold, silver, platinum and palladium. Specifically, when the materials arrived at the Pease & Curren facility, they would be weighed in a box for a "tare weight" in order to have an agreed-upon weight with the customer before processing. The shipment was then assigned a lot number. The lot number and

11

tare weight were recorded on an assay ticket. Depending on whether it was a high grade lot or bullion lot, or a low grade lot, the metal was fire assayed or incinerated or ball milled or a combination thereof in order to obtain a sample to determine the gold, silver, platinum and palladium content. After that process, the metal is weighed again for an "after melt weight" and then the sweeps are taken to the lab to be assayed for the actual amounts of each metal. A metallurgist in the lab would determine the weights based on the assays and then take the weights and record them on the assay ticket. After that, the assay ticket would go to a woman named Sandy Frappier who would record the percentages into Tracking, or enter the data into the computer database. Once the information was recorded, the assay tickets were handed off to one of the three officers of Pease & Curren, usually Robert Pease, Jr., sometimes Kip Curren and sometimes Meredith Curren. The results from the assay ticket would then be manually transcribed by one of the three officers onto the customer ledger card and the assay card would be incinerated. The payments to customers and reports for employees would be based on the amounts entered into the accounting software and the Mail List Master from the customer ledger card. Thereafter, the lots would be shipped out to a larger refinery for processing.

b.        Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without waiving the foregoing, the Plaintiff refers to the allegations in her Complaint and further states as follows: I acquired knowledge of the process used by Pease & Curren to determine the weight and percentages of metals recovered from dental customers when I first became employed by Pease & Curren.

c.        Please see the names of former and current employees and officer identified in Answer

No. 13.

d.      The three principal officers oversaw the process: Robert Pease, Jr., Kip Curren and

Meredith Curren. Also, Paul Dion, Bob Alcock and Dr. Raj Mishra.

e.      As previously stated, Robert Pease, Jr., Kip Curren, Meredith Curren, Paul Dion and Bob

Alcock. Also Sandy Frappier, Marianne Borges, and any individual working in the lab.

INTERROGATORY NO. 23:

        Please set forth in full detail the terms of your employment with Advanced Chemicals
Co., giving the terms of your compensation and or commissions, and whether you had a written
employment contract.

ANSWER NO. 23:

        I was an independent contractor working from home and I was paid a small weekly

stipend plus thirty percent (30%) on profit dollars.

INTERROGATORY NO. 24:

        Please set forth in itemized form you annual earnings from the date you left Pease &
Curren to the present, giving the year (or partial year if less) the names and address of your
employers, or contractors, and the amount received from each.

ANSWER NO. 24:

        Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: In June, 2002 (six months into the calendar

year), my earnings were approximately $53,000.00.

INTERROGATORY NO. 25:

        Please describe in complete and full detail any communications that you had with any
government agency or police department (state or federal) regarding Pease & Curren, giving the
date of such communications, the agencies and persons involved; the substance of such

communications were in writing.

<u>ANSWER NO. 25:</u>

I met with the Federal Bureau of Investigation on two occasions and I am aware of an ongoing investigation being performed by the Rhode Island State Police Financial Crimes Unit. The main person I am in contact with at the Rhode Island State Police is Detective Sergeant John LeMont. I gave a statement to the Rhode Island State Police with is included with my responses to Defendants' Request for Documents.

Signed under the pains and penalties of perjury thi s day of April, 2006.

PATRICIA 13ERGEYIN


As to Objections,

Gr or      Aceto, Esq.
  (BBOtt 558556)
Erin J. Brennan, Esq.
  (BBO#660097)
JOHNSON & ACETO, LLP
67 Batterymarch St., Suite 400
Boston, MA 02110
(617) 728-0888

15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05 11395 RCL

PATRICIA. BERGEVINE,
                          Plaintiff,

v.

PEASE & CURREN, INC.,
PEASE & CURREN MATERIALS, INC.,
ROBERT H. PEASE, JR., FRANCIS H.
CURREN, JR., FRANCIS H. CURREN III
A/K/A KIP CURREN, AND MEREDITH
CURREN,
                          Defendants.

**PLAINTIFF'S SUPPLEMENTAL ANSWERS TO
INTERROGATORIES PROPOUNDED BY THE DEFENDANTS**

NOW COMES the Plaintiff Patricia Bergevine (the "Plaintiff"), and pursuant to Rule 33

of the Massachusetts Rules of Civil Procedure, hereby supplements her answers to

interrogatories propounded by the Defendants Pease & Curren, Inc., Pease & Curren Materials,

Inc., Robert H. Pease, Jr., Francis H. Curren, Jr., Francis H. Curren, III A/K/A Kip Curren and

Meredith Curren (collectively, the "Defendants") as follows:

**GENERAL OBJECTIONS**

A.    The Plaintiff objects to the Interrogatories insofar as they request information protected
      by the attorney-client privilege or attorney-work product doctrine.

B.    The Plaintiff objects to the overly broad and unduly burdensome nature of the
      interrogatories.

## <u>INTERROGATORIES</u>

<u>INTERROGATORY NO.5:</u>

Please set forth all facts upon which you base your claim defendants "invested some part of the fraudulently derived income into the business in which they are currently engaged i.e., the business of refining metals, and into other enterprises."

<u>ANSWER NO.5:</u>

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague,

ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. The Plaintiff also objects to

this interrogatory on the grounds that it seeks information which is more readily available to the

Defendants. Answering further, please see the allegations contained in Plaintiff's Complaint.

<u>SUPPLEMENTAL ANSWER NO.5:</u>

Please see the Deposition Testimony of Francis H. Curren, III and Meredith Curren.

<u>INTERROGATORY NO. 10:</u>

Please set forth all facts upon which you base your claim as set forth in your complaint that you "suffered a racketeering injury by reason of the Defendant's pattern of racketeering behavior."

<u>ANSWER NO. 10:</u>

Objection. The Plaintiff objects to this interrogatory on the grounds that it calls for a

legal conclusion which is not within the reasonable knowledge of the Plaintiff. Subject to and

without waiving the foregoing, the Plaintiff refers to the allegations contained in Plaintiff's

Complaint.

SUPPLEMENTAL ANSWER NO. 10:

Please see the Deposition Testimony of Meredith Curren and Francis H. Curren, III.

INTERROGATORY NO. 12:

If you received medical, psychiatric, psychological, or other treatment or counseling as a result of Pease & Curren's actions alleged in your complaint, please state:

a.     the name and address of any and all persons, hospitals, counselors, social workers, or other providers from which you received medical or other treatment;

a full and complete description of all treatments, medication and tests that you received, including the dates of each, and the person or facility by whom/which each was administered; and

c.     an itemized account of all expenses incurred for the treatment referred to above.

ANSWER NO. 12:

I saw a psychiatrist named Cynthia Brown in North Attleboro, MA for approximately seven (7) to eight (8) visits. She prescribed me two (2) or three (3) different medications for the symptoms described in my Complaint, but when they did not work, I discontinued the medications and stopped seeing Dr. Brown.

SUPPLEMENTAL ANSWER NO. 13:

Objection. This answer is no longer relevant, as the Plaintiff has dismissed the claims related to emotional distress. It is important to note, however, that Plaintiff's counsel provided the Defendants with updated information regarding the psychiatrist and her address, and the Defendants' counsel questioned the Plaintiff regarding same during her deposition.

INTERROGATORY NO. 16:

Please set forth all facts upon which you base your claim that you are entitled to treble damages and attorneys' fees pursuant to 18 U.S.C. § 1964 (c).

ANSWER NO. 16:

Objection. The Plaintiff objects to this interrogatory on the grounds that it is vague, ambiguous, overly broad and unduly burdensome and seeks to impose a burden which is not

required by the Massachusetts Rules of Civil Procedure, Rule 26. Subject to and without

waiving the foregoing, the Plaintiff states as follows: Please see the allegations contained in my

Complaint.

SUPPLEMENTAL ANSWER NO. 16:

Objection. The Plaintiff further objects to this interrogatory on the grounds that it calls

for a legal conclusion which is not within the reasonable knowledge of the Plaintiff.

INTERROGATORY NO. 25:

Please describe in complete and full detail any communications that you had with any
government agency or police department (state or federal) regarding Pease & Curren, giving the
date of such communications, the agencies and persons involved; the substance of such
communications were in writing.

ANSWER NO. 25:

I met with the Federal Bureau of Investigation on two occasions and I am aware of an

ongoing investigation being performed by the Rhode Island State Police Financial Crimes Unit.

The main person I am in contact with at the Rhode Island State Police is Detective Sergeant John

LeMont. I gave a statement to the Rhode Island State Police with is included with my responses

to Defendants' Request for Documents.

SUPPLEMENTAL ANSWER NO. 25:

Please see the Deposition Transcript of Patricia Bergevine, pp. 120-123, 140-155.

Signed under the pains and penalties of perjury this ___ day of October, 2006.

PATRICIA BERGEVIN

As to Objections,

Grego . Aceto, Esq.
  (BBO# 558556)
Erin J. Brennan, Esq.
  (BBO#660097)
JOHNSON & ACETO, LLP
67 Batterymarch St., Suite 400
Boston, MA 02110
(617) 728-0888

CERTIFICATE OF SERVICE

I hereby certify theta true copy of the above document
was served on the attorney of record for each other
Party by nai herd on *.ei• • /.1141)*——

5